**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CEDRIC M. WRIGHT,

Plaintiff,

v.                                                                    Case No. 12-CV-107

ST. LOUIS BOARD OF POLICE COMMISSIONERS,
    as a body and through its members
    individually, in their official capacities;

      Serve: 1200 Clark Avenue
            St. Louis, MO 63103
            (Waiver of Service Requested)

FRANCIS SLAY, JR.
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

      Serve: 1200 Clark Avenue
            St. Louis, MO 63103
            (Waiver of Service Requested)

THOMAS IRWIN,
    in his official capacity as a member of the St.
    Louis Board of Police Commissioners;

      Serve: 1200 Clark Avenue
            St. Louis, MO 63103
            (Waiver of Service Requested)

BETTYE BATTLE-TURNER,
    in her official capacity as a member of the St.
    Louis Board of Police Commissioners;

      Serve: 1200 Clark Avenue
            St. Louis, MO 63103
            (Waiver of Service Requested)

RICHARD H. GRAY,
    in his official capacity as a member of the St.

Louis Board of Police Commissioners;

Serve: 1200 Clark Avenue
         St. Louis, MO 63103
         (Waiver of Service Requested)

DANIEL ISOM,
      in his official capacity as the Chief of Police for
      the St. Louis Metropolitan Police Department;

Serve: 1200 Clark Avenue
         St. Louis, MO 63103
         (Waiver of Service Requested)

GERALD LEYSHOCK,
      in his official capacity as Captain and
      Commander of the Third District of the St.
      Louis Metropolitan Police Department;

Serve: 1200 Clark Avenue
         St. Louis, MO 63103
         (Waiver of Service Requested)

ANDREW J. WISMAR, arresting police officer,
      in his official capacity as a police officer and in
      his individual capacity;

Hold for Service

JOHN DOE, arresting police officer two,
      in his official capacity as a police officer and in
      his individual capacity;

Hold for Service

JAMES DOE, booking police officer one,
      in his official capacity as a police officer and in
      his individual capacity;

Hold for Service

JOSEPH DOE, booking police officer two,
      in his official capacity as a police officer and in
      his individual capacity;

Hold for Service

ST. LOUIS CITY SHERIFF'S DEPARTMENT,
    as a body and through its Sheriff, in his official
    capacity;

    Serve: 1114 Market Street
          St. Louis, MO 63101
          (Waiver of Service Requested)

JAMES W. MURPHY,
    in his official capacity as St. Louis City Sheriff;

    Serve: 1114 Market Street
          St. Louis, MO 63101
          (Waiver of Service Requested)

JERALD DOE, deputy sheriff one,
    in his official capacity as a deputy sheriff and
    in his individual capacity;

    Hold for Service

JACKSON DOE, deputy sheriff two,
    in his official capacity as a deputy sheriff and
    in his individual capacity;

    Hold for Service

JEFFERSON DOE, deputy sheriff three,
    in his official capacity as a deputy sheriff and
    in his individual capacity;

    Hold for Service

ST. LOUIS CITY DIVISION OF CORRECTIONS,
    as a body and through its Commissioner, in his
    official capacity;

    Serve: 200 S. Tucker Blvd.
          St. Louis, MO 63102
          (Waiver of Service Requested)

CHARLES BRYSON,
    in his official capacity as interim Commissioner
    of the Division of Corrections;

    Serve: 200 S. Tucker Blvd.
        St. Louis, MO 63102
        (Waiver of Service Requested)

JUSTIN DOE, Justice Center corrections officer
one,
    in his official capacity as a corrections officer
    and in his individual capacity;

    Hold for Service

JACOB DOE, Justice Center corrections officer two,
    in his official capacity as a corrections officer
    and in his individual capacity;

    Hold for Service

Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff Cedric Wright for his complaint against Defendants, states as follows:

## INTRODUCTION

1.      This is a complaint for declaratory judgment and damages for civil rights violations arising out of incidents that occurred in St. Louis City, Missouri, from on or about August 20, 2011 through on or about October 20, 2011.

2.      On August 20, 2011, Defendant Andrew J. Wismar and three other officers of the Third District of the St. Louis Metropolitan Police Department (hereinafter "Metropolitan Police

Department") stopped Plaintiff near the intersection of Jefferson and Gravois in the City of St. Louis, on suspicion of petty larceny.

3.      At one of the officer's request, Plaintiff provided the officers with valid identification in the form of his driver's license and social security card.

4.      Despite Plaintiff's assurances that his identification was true, Defendant Andrew Wismar and the other officers claimed that Plaintiff was in fact an individual named Corey Darmel Leonard, who, upon information and belief, was the subject of an outstanding warrant issued by the Twenty-Second Judicial Circuit Court of Missouri.

5.      Despite Plaintiff's constant cooperation with Defendant Andrew Wismar and the other officers and Plaintiff's repeated protests that he was not Corey Darmel Leonard, the officers told Plaintiff he was under arrest for the outstanding warrant issued to Corey Darmel Leonard, and violently shoved Plaintiff into the patrol car, causing him bodily harm.

6.      Plaintiff was taken to the South Patrol Division of the Metropolitan Police Department (hereinafter "Substation") located at 3157 Sublette Ave., St. Louis, Missouri 63139.

7.      At the Substation, Plaintiff was improperly served the outstanding warrants for Corey Darmel Leonard issued by the Twenty-Second Judicial Circuit of Missouri, by Defendant John Doe, arresting officer two.

8.      Plaintiff was fingerprinted and given an inmate identification bracelet identifying him as Cedric Maurice Wright, by Defendant James Doe, booking police officer one.

9.      On the morning of August 22, 2011, Plaintiff was transported in the custody of the Metropolitan Police Department from the Substation to the St. Louis City Justice Center (hereinafter "Justice Center") located at 200 South Tucker Boulevard, St. Louis, Missouri 63102.

10.     Once at the Justice Center, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright (his true name), Defendant Joseph Doe, booking police officer two, wrongfully confined Plaintiff in a holding pen, to await a scheduled court appearance for Corey Darmel Leonard.

11.     From the holding pen, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Jerald Doe, deputy sheriff one took Plaintiff into the custody of the St. Louis Sheriff's Department (hereinafter "Sheriff's Department") and transported Plaintiff to a holding cell, to await a scheduled court appearance for Corey Darmel Leonard.

12.     From the holding cell, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, while in the custody of the Sheriff's Department, Defendant Jackson Doe, deputy sheriff two, transported Plaintiff to Division 26 in the Twenty-Second Judicial Circuit Court in the City of St. Louis before Judge Elizabeth Bryne Hogan (hereinafter "Judge Hogan").

13.     Upon information and belief, Judge Hogan and Assistant Circuit Attorney Patrick Carmody realized Plaintiff was being wrongfully detained as Corey Darmel Leonard.

14.     Mr. Carmody filed and Judge Hogan signed an order directing Plaintiff's release because he was not Corey Darmel Leonard, i.e., the proper defendant.  A copy of that order is attached to this Complaint as Exhibit A and is incorporated herein by reference.

15.     Despite the fact that Judge Hogan signed and ordered the release of Plaintiff on August 22, 2011, Plaintiff remained was wrongfully and involuntarily incarcerated for another sixty (60) days for charges pending against Corey Darmel Leonard.

16.     After Judge Hogan ordered Plaintiff's release, Defendant Jefferson Doe, deputy sheriff three, transported Plaintiff from Division 26 back to the Justice Center, where Plaintiff was put in the custody of the St. Louis City Division of Corrections (hereinafter "Division of Corrections").

17.     Despite the fact that Judge Hogan ordered Plaintiff's release, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard, and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Justin Doe, Justice Center officer one subjected Plaintiff to faulty inmate intake identification processes.

18.     From the Justice Center, despite the fact that Judge Hogan ordered Plaintiff's release, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard, and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Jacob Doe, Jacob Doe, Justice Center officer two, transported Plaintiff to the Medium Security Institution (commonly known as and referred to hereinafter as "Workhouse") located at 7600 North Hall Street, St. Louis, Missouri 63147, where he wrongfully remained in the custody of the Division of Corrections for sixty (60) days.

19.     From August 20, 2011 through October 20, 2011, for sixty-two (62) days, Plaintiff was wrongfully and involuntarily held in the custody of the Metropolitan Police Department, the Sheriff's Department, and/or the Division of Corrections.

- 7 -

20.     During said sixty-two (62) days, Plaintiff continued to protest that he was misidentified, that he did not know Corey Darmel Leonard, and that he was not involved in any criminal activity with Mr. Leonard. None of the defendants, nor their agents or employees, took any steps to investigate Plaintiff's truthful claims of innocence or misidentification, despite the fact that the defendants had Plaintiff's fingerprints and despite the fact that Judge Hogan had ordered him released.

21.     On or about October 16, 2011, Plaintiff wrote a letter to Public Defender Mary Fox, pleading for her assistance to secure his release because he was jailed for something he did not do and that he was accused of being someone named "Corey."

22.     On October 20, 2011, Ms. Fox appeared before Judge Francis Garvey, Jr., and explained the identification error. Judge Garvey then ordered Plaintiff's immediate release.

23.     On this occasion, the Defendants finally released Plaintiff from their custody.

24.     This is an action for money damages brought pursuant to 42 U.S.C. § 1983, because Plaintiff was wrongfully held in the custody of Defendants for sixty-two days—some 1,488 hours—in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

25.     Plaintiff also alleges that each of these violations were committed as a result of the hiring, training, supervision, policies, customs, and practices, or lack thereof, of the St. Louis Board of Police Commissioners for the St. Louis Metropolitan Police Department (hereinafter "Board"), the Sheriff's Department, and the Division of Corrections.

26.     Defendants' repeated refusal to verify Plaintiff's claims of innocence and misidentification shocks the conscience in that such conduct constituted deliberate indifference

or gross negligence to Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

27.     Plaintiff also has state law claims for false arrest and false imprisonment.

**PARTIES**

28.     Plaintiff is a citizen of the United States of America and a resident of the State of Missouri.

29.     Defendant Board is a governmental unit within the State of Missouri and is the governing body and employer for the Metropolitan Police Department, including the individually named police officers. Defendant Board is responsible for the training and supervision of Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Daniel Isom (hereinafter "Defendant Isom"), and Gerald Leyshock (hereinafter "Defendant Leyshock"). Defendant Board, through the individual members, is a corporate body and is authorized to be sued in its corporate name.

30.     Defendants Mayor Francis Slay, Thomas Irwin, Bettye Battle-Turner, and Richard H. Gray comprise the entire Board of Police Commissioners of the City of St. Louis. The individual board members have legal responsibility and policymaking authority for the Metropolitan Police Department and are named in their official capacity solely to maintain this action against Defendant Board for the claims alleged herein.

31.     Defendant Daniel Isom, is and was at all times relevant to the incidents described in this Complaint, the Chief of Police for the Metropolitan Police Department and was the highest ranking police officer in the City of St. Louis, charged with administering the police force, including training, supervising, disciplining, and dismissing individual police officers,

including Defendants Leyshock, Andrew Wismar, John Doe, James Doe, and Joseph Doe, as well as deciding which tasks police officers should perform. Defendant Isom is sued in his official capacity as Chief of Police for the Metropolitan Police Department.

32.     Defendant Leyshock, is and was at all times relevant to the incidents described in this Complaint, the Captain and Commander of the Third District for the Metropolitan Police Department, charged with training, supervising, disciplining, and dismissing individual police officers, including Defendant Andrew Wismar, Defendant John Doe, and Defendant James Doe, as well as deciding which tasks police officers should perform. Defendant Leyshock is sued in his official capacity as Chief of Police for the Metropolitan Police Department.

33.     Defendant Andrew Wismar, the arresting police officer, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Metropolitan Police Department, acting in such capacity as an agent and servant of the Metropolitan Police Department, acting under the control of Defendant Board, Defendant Isom, and Defendant Leyshock, and acting pursuant to an official policy, custom, and/or practice of the Metropolitan Police Department. Defendant Andrew Wismar is sued in his official capacity as a police officer for the Metropolitan Police Department, and also in his individual capacity.

34.     Defendant John Doe, police officer, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Metropolitan Police Department, acting in such capacity as an agent and servant of the Metropolitan Police Department, acting under the control of Defendant Board, Defendant Isom, and Defendant Leyshock, and acting pursuant to an official policy, custom, and/or practice of the Metropolitan

Police Department. Defendant John Doe is sued in his official capacity as a police officer for the Metropolitan Police Department, and also in his individual capacity.

35.     Defendant James Doe, booking police officer one, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Metropolitan Police Department, acting in such capacity as an agent and servant of the Metropolitan Police Department, acting under the control of Defendant Board, Defendant Isom, and Defendant Leyshock, and acting pursuant to an official policy, custom, and/or practice of the Metropolitan Police Department. Defendant James Doe is sued in his official capacity as a police officer for the Metropolitan Police Department, and also in his individual capacity.

36.     Defendant Joseph Doe, booking police officer two, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Metropolitan Police Department, acting in such capacity as an agent and servant of the Metropolitan Police Department, acting under the control of Defendant Board and Defendant Isom, and acting pursuant to an official policy, custom, and/or practice of the Metropolitan Police Department. Defendant Joseph Doe is sued in his official capacity as a police officer for the Metropolitan Police Department, and also in his individual capacity.

37.     Defendant Sheriff's Department is the governing body and the employer of Sheriff's employees for the City of St. Louis and is responsible for the training and supervision of Defendants James W. Murphy (hereinafter "Defendant Murphy"), Jerald Doe, Jackson Doe, and Jefferson Doe. Defendant Murphy has the legal responsibility and policymaking authority for the Sheriff's Department.

38.     Defendant Murphy, is and was at all times relevant to the incidents described in this Complaint, the Sheriff of the City of St. Louis, charged with responsibility for the safety and security of the thirty-one divisional courtrooms of the Twenty-Second Judicial Circuit Court, the transportation of prisoners between the Courts and detention facilities, and the training and supervision of the deputy sheriffs, including Defendants Jerald Doe, Jackson Doe, and Jefferson Doe. Defendant Murphy is sued in his official capacity as Sheriff of the City of St. Louis.

39.     Defendant Division of Corrections is the governing body and the employer for the Justice Center and the Workhouse and is responsible for the training and supervision of Defendants Gene Stubblefield (hereinafter "Defendant Stubblefield"), Justin Doe, and Jacob Doe. Defendant Stubblefield has legal responsibility and policymaking authority for the Division of Corrections.

40.     Defendant Gene Stubblefield, is and was at all times relevant to the incidents described in this Complaint, the Commissioner of the Division of Corrections, charged with the custodial care of pre-trial inmates at the Workhouse and the Justice Center, and the training and supervision of the Justice Center corrections officers, including Defendant Justin Doe and Jacob Doe. Defendant Stubblefield is sued in his official capacity, as Commissioner of the Division of Corrections.

41.     Defendant Justin Doe, Justice Center corrections officer one, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Division of Corrections, acting in such capacity as an agent and servant of the Division of Corrections, acting under the control of Defendant Division of Corrections and Defendant Stubblefield, and acting pursuant to an official policy, custom, and/or practice of the Division of

- 12 -

Corrections. Defendant Justin Doe is sued in his official capacity as a corrections officer for the Division of Corrections, and also in his individual capacity.

42.     Defendant Jacob Doe, Justice Center corrections officer two, is and was at all times relevant to the incidents described in this Complaint, a law enforcement officer for the Division of Corrections, acting in such capacity as an agent and servant of the Division of Corrections, acting under the control of Defendant Division of Corrections and Defendant Stubblefield, and acting pursuant to an official policy, custom, and/or practice of the Division of Corrections. Defendant Jacob Doe is sued in his official capacity as a corrections officer for the Division of Corrections, and also in his individual capacity.

43.     At all times relevant to this case and in all actions and omissions alleged herein, all Defendants were acting under color of state law.

## JURISDICTION AND VENUE

44.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the federal constitution, and therefore, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

45.     This Court has supplemental jurisdiction to hear and decide claims arising out of state law pursuant to 28 U.S.C. § 1367.

46.     The relevant acts and omissions occurred in St. Louis City, Missouri; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

47.     Divisional venue is in the Eastern Division because the events giving rise to the suit occurred in St. Louis City. E.D.Mo. L.R. 2.07(A)(1), (B)(1).

48.     The State of Missouri has waived sovereign immunity against the individual police officers and the Board of Police Commissioners of the City of St. Louis, by the enactment of Missouri Revised Statute § 105.711.

**BACKGROUND**

49.     On or about May 3, 2008, charges were brought in the City of St. Louis against Corey Darmel Leonard for the Class D Felony of Violation of Laws Pertaining to River Boat Gambling in violation of Missouri Revised Statute § 313.830, under cause number 0922-CR00381-01. Mr. Leonard was released on bond, but when he failed to appear on or about October 21, 2010, Judge Stephen R. Ohmer ordered his bond revoked and ordered a capias warrant issued for his arrest, 10-STFTA-559.

50.     On or about August 25, 2008, charges were brought in the City of St. Louis against Corey Darmel Leonard for the Class A Misdemeanor of Receiving Stolen Property less than $500 in violation of Missouri Revised Statute § 570.080, under cause number 0822-CR05202. Mr. Leonard was released on bond, but when he failed to appear on or about November 10, 2009, Judge Calea Stovall-Reid ordered a capias warrant issued for his arrest, 09-STFTA-527.

51.     On or about May 9, 2009, charges were brought in the City of St. Louis against Corey Darmel Leonard for the Class C Felony of Theft/Stealing of Property or Services in violation of Missouri Revised Statute § 570.030, under cause number 0922-CR02343-01. Mr. Leonard was released on bond, but when he failed to appear on or about October 21, 2010, Judge Stephen R. Ohmer ordered his bond revoked and forfeited and ordered a capias warrant issued for his arrest, 10-STFTA-560.

52. On August 20, 2011, around 7:00 P.M., Defendant Andrew Wismar and three other officers of the Metropolitan Police Department stopped Plaintiff near the intersection of Jefferson and Gravois in the City of St. Louis, on suspicion of petty larceny.

53. At one of the officer's request, Plaintiff provided the officers with valid identification in the form of his driver's license and social security card.

54. Despite Plaintiff's assurances that his identification was true, Defendant Andrew Wismar and the other officers insisted that Plaintiff was in fact Corey Darmel Leonard, who, upon information and belief, was the subject of an outstanding warrants issued by the Twenty-Second Judicial Circuit Court of Missouri for cases numbered 0822-CR05202, 0922-CR00381-01, 0922-CR02343-01.

55. Upon information and belief, Corey Darmel Leonard has never used the name Cedric Maurice Wright as an alias.

56. Plaintiff was unarmed and fully cooperated with Defendant Andrew Wismar and the other officers.

57. Plaintiff repeatedly tried to explain to Defendant Andrew Wismar that he was not Mr. Leonard.

58. Despite Plaintiff's constant cooperation with Defendant Andrew Wismar and the other officers and Plaintiff's repeated protests that he was not Corey Darmel Leonard, one or more of the officers threw Plaintiff to the ground, told Plaintiff he was under arrest for the outstanding warrant issued to Corey Darmel Leonard, and violently shoved Plaintiff into the patrol car.

59.     Plaintiff sustained a knee injury and bruising on his other limbs as a result of the excessive force used to execute the arrest.

60.     Upon information and belief, Defendant Andrew Wisnar and John Doe had no probable cause or reasonable suspicion of illegal conduct to arrest Plaintiff except for his mistaken belief that Plaintiff was Corey Darmel Leonard.

61.     After his arrest, Plaintiff was transported in the custody of the Metropolitan Police Department to the Substation, where he was fingerprinted and booked by Defendant James Doe.

62.     As Plaintiff was previously arrested and convicted for a minor criminal offense in the City of St. Louis, his fingerprints were already in the criminal identification database.

63.     Upon information and belief, the criminal identification database accurately contained information about Plaintiff, including his photo, fingerprints, date of birth, August 23, 1969, and social security number.

64.     As Corey Darmel Leonard was previously arrested and convicted for a criminal offense in the City of St. Louis, his fingerprints were also already in the criminal identification database.

65.     Upon information and belief, at all times mentioned herein, other unknown law enforcement officers and unknown corrections personnel of the Metropolitan Police Department, Sheriff's Department and Division of Corrections had various computer data bases at their disposal including Missouri Uniform Law Enforcement System (M.U.L.E.S.) and the National Crime Information Center (N.C.I.C.), which would have positively identified Plaintiff as Cedric Maurice Wright and not Corey Darmel Leonard, and failed to utilize or misused said

databases, thereby directly and proximately leading to wrongful detention of Plaintiff for sixty-two (62) days.

66.     Upon information and belief, the criminal identification database accurately contained information about Corey Darmel Leonard, including his photo, fingerprints, date of birth, May 13, 1971, and social security number.

67.     Despite Plaintiff's proof of identification, and repeated protests that he was not Mr. Leonard, upon information and belief, one or more officers at the Substation, including Defendant James Doe, failed to compare Plaintiff's fingerprints to Mr. Leonard's, which would have exonerated Plaintiff.

68.     Instead, at the St. Louis City Police Substation, Defendant John Doe served Plaintiff with the capias warrants issued for Mr. Leonard by the Twenty-Second Judicial Circuit Court of Missouri for cases numbered 0822-CR05202, 0922-CR00381-01, 0922-CR02343-01.

69.     On the morning of August 22, 2011, Plaintiff was transported in the custody of the Metropolitan Police Department from the Substation to the Justice Center.

70.     Once at the Justice Center, upon information and belief, while in the custody of the Metropolitan Police Department, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Joseph Doe wrongfully confined Plaintiff in a holding pen, to await a scheduled court appearance for Corey Darmel Leonard under case number 0822-CR05202.

71.     Upon information and belief, despite Plaintiff's proof of identification, and repeated protests that he was not Mr. Leonard, one or more Metropolitan Police Department

officers at the Justice Center, including Defendant Joseph Doe, failed to compare Plaintiff's fingerprints to Corey Darmel Leonard's, which would have demonstrated that the wrong individual was in the defendants' custody.

72.     From the holding pen, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Jerald Doe took Plaintiff into the custody of the Sheriff's Department and transported Plaintiff to a holding cell, to await a scheduled court appearance for Corey Darmel Leonard.

73.     From the holding cell, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, while in the custody of the Sheriff's Department, Defendant Jackson Doe transported Plaintiff to Division 26 in the Twenty-Second Judicial Circuit Court in the City of St. Louis before Judge Hogan.

74.     Upon information and belief, when Plaintiff did not respond when Judge Hogan called out "Corey Darmel Leonard," Judge Hogan and Assistant Circuit Attorney Patrick Carmody realized Plaintiff was being wrongfully detained as Corey Darmel Leonard under case number 0822-CR05202.

75.     Mr. Carmody filed and Judge Hogan signed an order requesting Plaintiff's release due to the fact he was not the proper defendant on case number 0822-CR05202.

76.     Despite the fact that Judge Hogan signed and ordered the release of Plaintiff on August 22, 2011 under case number 0822-CR05202, Plaintiff was wrongfully and involuntarily incarcerated for another sixty (60) days.

77.     After Judge Hogan ordered Plaintiff's release, Defendant Jefferson Doe transported Plaintiff from Division 26 back to the Justice Center, where Plaintiff was put in the custody of the Division of Corrections.

78.     Despite the fact that Judge Hogan ordered Plaintiff's release, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard, and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Justin Doe subjected Plaintiff to faulty inmate intake identification processes, including fingerprinting.

79.     From the Justice Center, despite Plaintiff's repeated protests that he was not Corey Darmel Leonard, and despite the fact that Plaintiff was given an inmate identification bracelet identifying him as Cedric Maurice Wright, Defendant Jacob Doe transported Plaintiff to the Workhouse, where he wrongfully remained in the custody of the Division of Corrections for another sixty (60) days after Judge Hogan ordered Plaintiff's release.

80.     On or about October 16, 2011, at the suggestion of a fellow inmate, Plaintiff wrote a letter to Public Defender Mary Fox, pleading for her assistance to secure his release because he was jailed for something he did not do and that he was accused of being someone named "Corey."

81.     On or about October 18, 2011, Ms. Fox received Plaintiff's letter, and she soon discovered that Corey Darmel Leonard was incarcerated at that time in the St. Louis County Justice Center, not the City of St. Louis.

82.     Upon information and belief, Ms. Fox's office contacted the Workhouse, who informed them that as of the time of the phone call, Plaintiff was being held on three Missouri cases, numbers: 0822-CR05202, 0922-CR00381-01, and 0922-CR02343-01.

83.     On October 20, 2011, Plaintiff finally was brought before Judge John F. Garvey, Jr., in Division 16 at the St. Louis City Criminal Courthouse. Ms. Fox appeared on behalf of Plaintiff and explained the identification error. Plaintiff was informed that a mistake had been made and that he should not have been arrested or detained. Judge Garvey then ordered Plaintiff's immediate release on cases numbered 0822-CR05202, 0922-CR00381-01, and 0922-CR02343-01.

84.     On this occasion, the defendants followed the judge's order and finally released the Plaintiff.

85.     From August 20, 2011 through October 20, 2011, for sixty-two (62) days, Plaintiff was wrongfully and involuntarily held in the custody of the Metropolitan Police Department, the Sheriff's Department, and/or the Division of Corrections.

86.     Upon information and belief, the real Corey Darmel Leonard was being held at the St. Louis County Justice Center in Clayton, Missouri throughout the time that Plaintiff was wrongfully and involuntarily held.  The Defendants failed to check or ascertain this fact.

87.     During said sixty-two (62) days, Plaintiff continued to protest that he was misidentified, that he did not know Corey Darmel Leonard, and that he was not involved in any criminal activity with Mr. Leonard. Throughout his time in custody, Plaintiff repeatedly complained about his unlawful detention to jail personnel, who were employees and agents acting on behalf and under the direction of Defendants Board, Isom, Leyschock, and

Stubblefield. Plaintiff's complaints were summarily ignored. None of the defendants, nor their agents or employees, investigated Plaintiff's claims of innocence or misidentification.

88.    From August 22, 2011, at the time Judge Hogan ordered Plaintiff was the improper defendant in case number 0822-CR05202, until October 20, 2011, Plaintiff remained wrongfully charged in that case as Corey Darmel Leonard.

89.    Plaintiff was never brought before a judge for warrants issued to Corey Darmel Leonard for cases numbered 0922-CR00381-01 and 0922-CR02343-01.

90.    Judge Garvey ordered Plaintiff immediate release from custody, to which the Defendants complied.

91.    Defendants Board, Isom, Leyshock, Sheriff's Department, Murphy, Division of Corrections, and Stubblefield's failure to provide sufficient policies, training, and supervision of police officers, deputy sheriffs, and corrections officers, specifically said officers and sheriffs' unlawful arrests, seizures, detentions, faulty execution of warrants, and lack of policies or enforcement of policies to prevent the misidentification of detained persons, is unconstitutional, and their deliberate indifference to, and willful tolerance of, such practices and customs (or lack their of) represents deliberate indifference to the rights of persons with whom the officers come into contact.

92.    Defendant Board delegated its policymaking and/or supervisory authority, in whole or in part, to Defendants Slay, Irwin, Battle-Turner, Gray, Isom, and Leyshock, each acting under color of state law. Therefore, Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, and Leyshock are liable for the unconstitutional actions of Defendants Andrew Wismar, John Doe, James Doe, and Joseph Doe, by failing to properly train and supervise, and by the

deliberate indifference and willful blindness to the unlawful customs described above. Had Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, and Leyshock provided proper policies, training, and supervision to Defendants Andrew Wismar, John Doe, James Doe, and Joseph Doe, or prevented the longstanding customs described above, Plaintiff's federal and state constitutional rights would not have been violated.

93.     Defendant St. Louis City Sheriff's Department delegated its policymaking and supervisory authority, in whole or in part, to Defendant Murphy who acted under color of state law. Therefore, Defendant St. Louis City Sheriff's Department and Defendant Murphy  are liable for the unconstitutional actions of Defendant Jerald Doe, Defendant Jackson Doe, and Defendant Jefferson Doe, by failing to properly train and supervise, and by the deliberate indifference and willful blindness to the unlawful customs described above. Had Defendant St. Louis City Sheriff's Department and Defendant Murphy provided proper policies, training, and supervision to Defendants Jerald Doe, Jackson Doe, and Jefferson Doe, or prevented the longstanding customs described above, Plaintiff's federal and state constitutional rights would not have been violated.

94.     Defendant Division of Corrections delegated its policymaking and supervisory authority, in whole or in part, to Defendant Stubblefield who acted under color of state law. Therefore, Defendant Division of Corrections and Defendant Stubblefield are liable for the unconstitutional actions of Defendant Justin Doe and Defendant Jacob Doe, by failing to properly train and supervise, and by the deliberate indifference and willful blindness to the unlawful customs described above. Had Defendant Division of Corrections and Defendant Stubblefield provided proper policies, training, and supervision to Defendant J.C. Officer and

Defendant Jacob Doe, or prevented the longstanding customs described above, Plaintiff's federal and state constitutional rights would not have been violated.

95.     As the direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered the following injuries and damages:

     a.  Loss of his physical liberty for sixty-two (62) days;

     b.  Loss of employment with Goodwill;

     c.  Violation of his constitutional rights under the Fourth Amendment to be free from unreasonable seizure of his person and the right to be free from unreasonable arrest and to be free from excessive force;

     d.  Violation of his constitutional rights under the Fourteenth Amendment to be free from wrongful incarceration without due process of law;

     e.  Violation of his rights in the State of Missouri to be free from false arrest and false imprisonment.

<u>**COUNT I — FOURTH AMENDMENT**</u>

96.     For his first claim for relief, which is against all Defendants in their official capacities, and Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe in their individual capacities, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 95, as if fully set forth herein.

97.     Defendants subjected Plaintiff to an unlawful and unjustified search and seizure of his person in violation of the Fourth Amendment to the U.S. Constitution by one or more of the following acts:

a. Placing Plaintiff under arrest without a valid warrant, probable cause, or reasonable suspicion of illegal conduct;

b. Transporting Plaintiff in their custody to the Sublette, where he was searched upon intake;

c. Transporting Plaintiff in their custody to the Justice Center, where he was searched upon intake;

d. Transporting Plaintiff in their custody to the Workhouse, where he was searched upon intake;

e. Causing Plaintiff to be subjected to a search without a valid warrant, probable cause, reasonable suspicion of illegal conduct, or any other justification;

f. Creating and approving policies in which the misidentification and wrongful detention of Plaintiff could be perpetrated and go undetected for a period of sixty-two (62) days;

g. Creating and approving policies in which a judge could order the release of an inmate but continue to be wrongfully detained for a subsequent period of sixty (60) days without detection.

98.    The search and seizure suffered by Plaintiff was illegal and unreasonable, and deprived Plaintiff of his civil rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

99.    It was the policy or custom of Defendant Board, Defendant Isom, Defendant Leyshock, Defendant Sheriff's Department, Defendant Murphy, Defendant Division of Corrections, and Defendant Stubblefield to inadequately train and supervise its officers or

deputy sheriffs to avoid the unreasonable seizure of Plaintiff's person based on a wrongful identification.

100.    It was the policy or custom of Defendant Board, Defendant Isom, Defendant Leyshock, Defendant Sheriff's Department, Defendant Murphy, Defendant Division of Corrections, and Defendant Stubblefield to inadequately train and supervise its officers or deputy sheriffs in proper identification procedures during arrests and detentions pursuant to and the execution of capias warrants.

101.    Defendants failed to adopt or promulgate precise and clear identification procedures, and adopted and permitted customs and practices which led to the misidentification and apprehension of Plaintiff.

102.    Defendants' procedures for arrest and detention of suspects was so carelessly drawn as to lead to misidentification in the case at bar.

103.    The foregoing acts or omissions by Defendant Board occurred through, Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leshock, Andrew Wismar, John Doe, James Doe, and Joseph Doe in their official capacities.

104.    The foregoing acts or omissions by Defendant Sheriff's Department occurred through Defendants Murphy, Jerald Doe, Jackson Doe, and Jefferson Doe in their official capacities.

105.    The foregoing acts or omissions by Defendant Division of Corrections occurred through Defendants Stubblefield, Justin Doe, and Jacob Doe in their official capacities.

106.     At all times of the events described in this Complaint, Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe acted under color of state law.

107.     Defendant Board's, Defendant Isom's, Defendant Leyshock, Defendant Sheriff's Department's, Defendant Murphy's, Defendant Division of Correction's, and Defendant Stubblefield's policies, customs, and practices as alleged above similarly constitute a violation of and deliberate indifference to Plaintiff's constitutional rights.

108.     Defendants' conduct is outrageous and shocks the conscience.

109.     As a direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered unreasonable seizure of his person without a warrant or probable cause in violation of the Fourth Amendment for sixty-two (62) days.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants; declare that the foregoing policies or customs of Defendant Board, Defendant Sheriff's Department, and Defendant Division of Corrections unconstitutional; issue an injunction requiring Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, Murphy, and Stubblefield to develop and implement adequate training programs for its police and corrections officers about citizen's rights under the Fourth Amendment; award Plaintiff compensatory damages against all Defendants for their violation of Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe, in their individual capacities, for their violation of Plaintiff's constitutional rights under the color of state law; award Plaintiff reasonable costs and

attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

**COUNT II — FOURTEENTH AMENDMENT**

110.    For his second claim for relief, which is against all Defendants in their official capacities, and Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe in their individual capacities, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 110, as if fully set forth herein.

111.    By one or more of the following acts violated Plaintiff's clearly established constitutional right to due process under the Fourteenth Amendment not to be detained for an extended period of time without a court appearance:

   a. Causing Plaintiff to be detained involuntarily for sixty-two (62) days without prompt access to the judicial system for two charges;

   b. Causing Plaintiff to be detained involuntarily for sixty (60) days without further access to the judicial system after being ordered released on a charge;

   c. Failing to provide Plaintiff a means for initiating a challenge to the duration of his detention;

   d. Failing to provide Plaintiff a means for initiating a challenge to the validity of his detention;

   e. Failing to inform Plaintiff of available means for initiating a challenge to the duration or validity of his detention;

     f.   Failing to communicate Plaintiff's complaints about his unlawful detention to their superiors, to a prosecutor, or to a judge;

     g.   Failing to take any action for sixty-two (62) days to ensure that Plaintiff was held pursuant to a validly executed capias warrant;

112.    It was the policy, custom, and practice of the Defendant Board, Defendant Isom, Defendant Leyshock, Defendant Sheriff's Department, Defendant Murphy, Defendant Division of Corrections, and Defendant Stubblefield to inadequately supervise and train its officers or sheriffs, including Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe, thereby failing to prevent the constitutional violations against Plaintiff, in one or more of the following ways:

     a.   Inadequately training or supervising officers or sheriffs under their supervision to inform persons detained on a capias warrant, such as Plaintiff, of available means for initiating a challenge to the duration or validity of his detention; and/or

     b.   Inadequately training or supervising officers or sheriffs under their supervision to report the complaints of unlawful detention by persons detained on a capias warrant, such as Plaintiff.

     c.   Inadequately training or supervising officers or sheriffs under their supervision in proper identification procedures for identification of detainees.

113.    The foregoing acts or omissions by Defendant Board occurred through, Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leshock, Andrew Wismar, John Doe, James Doe and Joseph Doe in their official capacities.

114.    The foregoing acts or omissions by Defendant Sheriff's Department occurred through Defendants Murphy, Jerald Doe, Jackson Doe, and Jefferson Doe in their official capacities.

115.    The foregoing acts or omissions by Defendant Division of Corrections occurred through Defendants Stubblefield, Justin Doe, and Jacob Doe in their official capacities.

116.    At all times of the events described in this Complaint, Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe acted under color of state law.

117.    Defendant Board's, Defendant Isom's, Defendant Leyshock, Defendant Sheriff's Department's, Defendant Murphy's, Defendant Division of Correction's, and Defendant Stubblefield's policies, customs, and practices as alleged above similarly constitute a violation of and deliberate indifference to Plaintiff's constitutional rights.

118.    As the direct and proximate cause of the foregoing, Plaintiff suffered the following injuries and damages:

a.  Loss of his physical liberty for sixty-two (62) days;

b.  Loss of employment with Goodwill;

c.  Violation of his right to Due Process under the Fourteenth Amendment of the U.S. Constitution.

119.    Defendants' conduct is outrageous and shocks the conscience.

120.    As a direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered unlawful deprivation of his liberty without due process, for sixty-two (62) days, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against all Defendants; declare that the foregoing policies or customs of Defendant Board and Defendant Stubblefield unconstitutional; issue an injunction requiring Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, Sheriff's Department, Murphy, Division of Corrections, and Stubblefield to develop and implement adequate training programs for its police officers about citizen's rights under the Fourteenth Amendment; award Plaintiff compensatory damages against all Defendants for their violation of Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, Jacob Doe, in their individual capacities, for their violation of Plaintiff's constitutional rights under the color of state law; award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

### COUNT III — FOURTH AMENDMENT: EXCESSIVE FORCE

121.    For his third claim for relief, which is against Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, and Andrew Wismar, in their official capacities, and Defendant Andrew Wismar also in his individual capacity, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 120, as if fully set forth herein.

122.    Defendant Andrew Wismar and three other officers used excessive force when arresting Plaintiff in violation of his Fourth Amendment right to be free from excessive force by violently throwing Plaintiff to the ground and shoving Plaintiff in the patrol car with such excessive force as to cause bruising to his limbs and injuries to his knee.

123.     Plaintiff's constitutional right against excessive force was clearly established at the time of the officers' conduct because at no time during the arrest did Plaintiff attempt to flee, make physically threatening mannerisms, or make verbally threats. Further such force was unreasonable and unnecessary to execute the arrest of Plaintiff because Plaintiff was at all times cooperative with Defendant Andrew Wismar and the other officers.

124.     Thus, Defendants are not entitled to qualified immunity.

125.     The amount of force used by Defendant Andrew Wismar to effectuate the arrest of Plaintiff was objectively unreasonable because:

   a. The severity of the crime Plaintiff was suspected of committing at the time of arrest, petty larceny, was low;

   b. Plaintiff posed no immediate safety threat to Defendant Andrew Wismar or others because he was unarmed and was cooperative and was not physically or verbally threatening to the officer or others.

   c. Plaintiff did not resist arrest or attempt to evade arrest by flight.

126.     A reasonable officer would know that using such force as to cause bruising and knee injuries is unnecessary and unlawful conduct when confronted with a suspect who is docile, compliant, and unarmed.

127.     Such force was unnecessary, gratuitous, and disproportionate to the situation presented to Defendant Andrew Wismar.

128.     As the direct and proximate cause of the foregoing, Plaintiff suffered the following injuries and damages:

   a. Physical injuries to his knee and other limbs.

       b.   Violation of his right to Due Process under the Fourteenth Amendment of the U.S. Constitution.

129.    Defendants' conduct is outrageous and shocks the conscience.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, and Andrew Wismar; issue an injunction requiring Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, and Leyshock, to develop and implement adequate training programs for its police officers about citizen's rights under the Fourth Amendment; award Plaintiff compensatory damages against against Defendants Board, Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, and Andrew Wismar for their violation of Plaintiff's constitutional rights under color of law; award Plaintiff punitive damages against Defendants Andrew Wismar, in his individual capacities, for his violation of Plaintiff's constitutional rights under the color of state law; award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

## COUNT IV —FALSE ARREST AND FALSE IMPRISONMENT

130.    For his fourth claim for relief, which is against Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe, in their individual capacities, Plaintiff incorporates by reference the allegations of Paragraphs 1 through 129, as if fully set forth herein.

131.    Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe, restrained, arrested, and imprisoned Plaintiff against his will without legal justification for a period of sixty-two (62) days.

132.    Defendants knew or should have known that Plaintiff's arrest illegal and there was no legal right to imprison Plaintiff because:

a. At the time he was arrested and at the subsequent inventory searches conducted on Plaintiff, he presented his driver's license issued to him by the State of Missouri and his social security card, both identifying him as Cedric Maurice Wright;

b. Throughout his incarceration, Plaintiff repeatedly told Defendants he was not Corey Darmel Leonard and that he did not know and was not affiliated with Corey Darmel Leonard;

c. Plaintiff was fingerprinted at least twice;

d. On August 22, 2011, Judge Hogan ordered Plaintiff's release because he was not Corey Darmel Leonard.

133.    The false arrest suffered by Plaintiff occurred during an illegal search and seizure in violation of Plaintiff's rights under the Fourth Amendment and was without legal justification.

134.    As the direct and proximate cause of the foregoing, Plaintiff suffered the following injuries and damages:

a. Loss of physical liberty for sixty-two (62) days;

b. Mental pain and suffering, including fear that he would never properly be identified and that he may be incarcerated indefinitely—especially after Judge Hogan's order for his release went ignored;

    c.   Mental pain and suffering, including shame, humiliation, and mortification from the indignity and disgrace of being incarcerated for sixty-two (62) days and losing his employment with Goodwill;

    d.   Loss of employment earnings and employment opportunity with Goodwill.

135.    At all times of the events described in this Complaint, Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe acted under color of state law.

136.    Defendants' conduct constituted a willful violation of and deliberate indifference to Plaintiff's constitutional right to be free from wrongful and prolonged incarceration and deprivation of his liberty.

137.    Defendants' conduct is offensive, outrageous and shocks the conscience.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in favor of Plaintiff and against Defendants Arresting Officer, Booking Officer, and Justin Doen their individual capacities; award plaintiff compensatory, punitive, and aggravated damages against Defendants Andrew Wismar, John Doe, James Doe, Joseph Doe, Jerald Doe, Jackson Doe, Jefferson Doe, Justin Doe, and Jacob Doe, in their individual capacities, for their false arrest and false imprisonment of Plaintiff; award Plaintiff costs and reasonable attorneys' fees; and grant such other and further relief as is available and appropriate under the circumstances.

HACKING LAW PRACTICE, LLC

/s/ James O. Hacking, III
James O. Hacking, III
jim@hackinglawpractice.com
34 N. Gore, Suite 101
Phone: (314) 961-8200
Fax: (314) 961-8201