UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CEDRIC M. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV00107 AGF |
| ) | |
| ST. LOUIS BOARD OF ) | |
| POLICE COMMISSIONERS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Complaint filed by Plaintiff, Cedric M. Wright, against various individuals and government entities for alleged constitutional and civil rights violations related to his arrest, based on a mistake in identity, and the failure thereafter to release Plaintiff from custody notwithstanding confirmation of the mistake in identity.

In general, Plaintiff alleges that on August 20, 2011, he was mistakenly arrested and detained by St. Louis City police officers on three outstanding warrants issued for Corey Darmel Leonard.  Less than 48 hours after his arrest, Plaintiff had a court appearance in which the error was recognized, and the judge entered an order directing his release.  Despite the order of release, Plaintiff was transported to a workhouse, where he remained in custody until October 20, 2011.  Based on these events, Plaintiff filed a four-count complaint against various members of the St. Louis Police Department, the St. Louis City Sheriff's Department, and the St. Louis City Division of Corrections, alleging

violations of his constitutional rights under the Fourth and Fourteenth Amendments, as well as Missouri state law claims of false arrest and false imprisonment.

Now before the Court are two motions to dismiss for failure to state a claim upon which relief may be granted.  (Docs. No. 27, 36.)   For the reasons set forth below, Defendants' motions to dismiss will be granted in part and denied in part.

**The Complaint**

The Complaint names the following as Defendants:   the St. Louis Board of Police Commissioners (hereinafter "Board"); Board members Mayor Francis Slay, Thomas Irwin, Bettye Battle-Turner, and Richard H. Gray (hereinafter "Board Members"); Daniel Isom, the Chief of Police for the Metropolitan Police Department (hereinafter "Police Department"); Gerald Leyshock, the Captain and Commander of the Third District for the Police Department; police officers for the Police Department Andrew Wismar, Brian Eisele, and two "John Doe" police officers; the St. Louis City Sheriff's Department (hereinafter the "Sheriff's Department"); the Sheriff of the City of St. Louis James Murphy; deputy sheriff Benjamin Goins and one "John Doe" deputy sheriff; the St. Louis City Division of Corrections (hereinafter "Division of Corrections"); the Commissioner of the Division of Corrections Gene Stubblefield; and two "John Doe" corrections officers.

Plaintiff filed a four-count Complaint.   Count I, against all Defendants in their official capacities and against Wismar, Eisele, Goins and the five "John Does" in their individual capacities, alleges unlawful and unjustified search and seizure of Plaintiff, without warrant or probable cause, in violation of the Fourth Amendment to the United States Constitution and in violation of 42 U.S.C. § 1983 for deprivation of Plaintiff's civil

2

rights.   Count II, against all Defendants in their official capacities and against Wismar, Eisele, Goins and the five "John Does" in their individual capacities, alleges unlawful deprivation of Plaintiff's liberty without due process for 62 days in violation of Plaintiff's constitutional right to due process under the Fourteenth Amendment not to be detained for an extended period of time without a court appearance.   Count III alleges claims against the Board, Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, and Wismar in their official capacities, and against Wismar in his individual capacity, for unreasonable and unnecessary use of excessive force when arresting Plaintiff, in violation of his right to due process under the Fourteenth Amendment.   Count IV, against Wismar, Eisele, Goins, and the five "John Does" in their individual capacities, alleges state common law claims of false arrest and false imprisonment for 62 days, causing Plaintiff loss of physical liberty, mental pain and suffering, loss of employment earnings, and loss of employment opportunity.

**Facts Alleged**

Plaintiff alleges that on August 20, 2011, he was detained by Defendants Wismar, Eisele, and two other officers on suspicion of petty larceny.   Plaintiff provided identification that showed him to be Cedric Wright, but Defendants claimed that he was an individual named Corey Darmel Leonard, the subject of outstanding warrants issued by the 22nd Judicial Circuit Court of Missouri.   Plaintiff insisted that Defendants were mistaken, but they told him he was under arrest pursuant to the outstanding warrant for Leonard. Plaintiff alleges that Defendants violently shoved him into the patrol car, causing bruising to his limbs and injuries to his knees, and drove him to the South Patrol Division substation.

At the substation, Defendant Eisele served Plaintiff with three outstanding warrants issued for Leonard. Plaintiff was then fingerprinted by Defendant James Doe. Because his fingerprints were already in the system, Plaintiff was provided with an inmate identification bracelet identifying him as Cedric Maurice Wright. Despite this bracelet and his assertions that he was not Leonard, Plaintiff was booked and held in custody of the Police Department as Leonard.

On the morning of August 22, 2011, Plaintiff was transported from the substation to the St. Louis City Justice Center. Plaintiff repeated his protests that he was not Leonard, but Defendant Joseph Doe placed him in a holding pen to await a court appearance for Leonard. Plaintiff was then taken into the custody of the Sheriff's Department by Defendant Jerald Doe, who placed him in a holding cell to await a court appearance for Leonard. Plaintiff continued his protests, but Defendant Goins transported him to Division 26 for an appearance before Judge Elizabeth Bryne Hogan on one of the three warrants for Leonard.

In court, Judge Hogan and Assistant Circuit Attorney Patrick Carmody realized that Plaintiff was being wrongfully detained as Leonard. Upon that realization, Judge Hogan signed an order directing Plaintiff's release, as he was not the proper defendant. Despite that order, Defendant Goins transported Plaintiff back to the Justice Center, where Plaintiff was taken into custody of the Division of Corrections. Plaintiff continued to protest, but no action was taken. On October 16, 2011, Plaintiff wrote to Public Defender Mary Fox, seeking assistance to secure his release. On October 20, 2011, Fox appeared before Judge Francis Garvey, Jr., and explained Plaintiff's dilemma. Judge Garvey

4

ordered Plaintiff's immediate release, which was implemented that day. From the day of Judge Hogan's initial release order until the time of his release, Plaintiff was in custody for a total of 60 days.

## DISCUSSION

In the motions now before the Court, Defendant Andrew Wismar seeks dismissal of the claims in Counts I, II, and III asserted against him in his official capacity, and the Count II claims against him in his individual capacity. (Doc. No. 36.) Defendants Board, Board Members, Isom, and Leyshock seek dismissal of all claims against the Board itself,[1] of all claims in Count II against Isom and Leyshock, and all claims in Count I, II, and III against the Board Members. (Doc. No. 27.)

**Standard of Review**

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and reviews the

---

[1] On April 16, 2012, Plaintiff filed a notice of dismissal with respect to the Board; said dismissal was ordered by the Court on April 17, 2012 (Docs. No. 30, 31). Thus, the portion of this motion with respect to the Board is moot.

complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. at 545; FED. R. CIV. P. 8(a)(2). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (noting that federal courts will not entertain "an unadorned, the-defendant-unlawfully-harmed-me accusation; [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

**Claims Against Wismar in His Official Capacity**

In support of his motion, Defendant Wismar argues that the claims asserted in Counts I, II, and III[2] against him in his official capacity should be dismissed because they are duplicative of the claims against his employer, the Board Members. In response, Plaintiff argues that his claims against Wismar are distinct from those he brings against the Board Members.

---

[2] Wismar's motion actually requests the dismissal of the official-capacity claims in all four counts. However, there is no official-capacity claim against Wismar in Count IV, nor does Count IV make any claims against the Board Members. Thus, the request as related to Count IV is moot.

6

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Moreover, "[o]fficial-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006) (*quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the alleged violation." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

In this case, the official-capacity claims in Counts I, II, and III against Wismar are premised on Wismar's adherence to policies or customs established by the Board Members. Similarly, the claims against the Board Members in Counts I, II and III are premised on the Board Members' policymaking authority for the Police Department, and the contention that those policies caused the allegedly unconstitutional actions of Wismar. Plaintiff argues that the claims are distinct because his claims against the Board Members as final policymakers is different that his claims against Wismar for acting pursuant to those policies and customs, and that Wismar does not have policymaking authority. This is a distinction without a difference for purposes of official-capacity liability. *See, e.g., Veatch*, 627 F.3d at 1257; *Grayson*, 454 F.3d at 810-11; *Rogers*, 152 F.3d at 800. The fact that Plaintiff seeks injunctive relief against the Board Members, but not against Wismar, does not make the claims distinct enough to maintain them as separate claims.

7

The Court agrees that, to the extent Plaintiff seeks relief against Wismar in his official capacity, these claims are duplicative of his claims against the Board Members, who are sued in their official capacities. Accordingly, Counts I, II, and III against Defendant Wismar in his official capacity will be dismissed.

**Claim in Count II Against Wismar in His Individual Capacity**

Wismar argues that the Count II claim against him in his individual capacity should be dismissed because he is entitled to qualified immunity.

Resolving a claim of qualified immunity requires a two-part inquiry. "The first question is whether the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional or statutory right." *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the answer is yes, the next question is whether that right was so clearly established that it would have been 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*. at 871-872 (*quoting Saucier*, 533 U.S. at 202). "This second question is a fact-intensive inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (*quoting Saucier*, 533 U.S. at 201). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (internal quotations omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 US. 224, 229 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 and 343 (1986)).

In this case, the first question is whether Wismar's arrest of Plaintiff pursuant to validly issued warrants for Corey Darmel Leonard constitutes a violation of Plaintiff's due process constitutional rights. In a § 1983 claim, where the plaintiff alleges that "the wrong person was arrested under a valid warrant and a delay occurred before release," the plaintiff must prove that the "defendant was deliberately indifferent to the plaintiff's right to be released." *Golberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005). Accordingly, the arresting officers will not be held liable for negligent or unreasonable conduct in such situations. *Id.* The officer "executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity . . ." *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979). Furthermore, "[t]he Constitution does not guarantee that only the guilty will be arrested." *Id.* at 145. However, an extended detention without an initial appearance in court "will after the lapse of a certain amount of time deprive" the arrestee of due process of law. *Id.* In *Baker*, the United States Supreme Court found that a three-day detention over New Year's weekend was not a deprivation of due process. *Id.*; *but cf. Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985) (18-day detention after arrest by warrant without initial appearance violated arrestee's substantive due process rights); *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 675 (8th Cir. 2004) (38-day detention without initial appearance is unconstitutional).

There are two separate detention periods at issue in the complaint. The first is the two-day detention by the Police Department between Plaintiff's arrest on August 20 and his initial appearance on August 22. The second is his 60-day detention in the Division of

9

Corrections following Judge Hogan's order of release. The constitutionality of the first detention must be analyzed under the Fourth Amendment, which is raised in Count I. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994); *Golberg,* 417 F.3d at 810-11; *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000). The constitutionality of the second detention must be analyzed under the Due Process Clause of the Fourteenth Amendment. *Goldberg,* 417 F.3d at 811. Thus, only the post-hearing detention is at issue in Count II.

Plaintiff argues that the Court should look at "the totality of the circumstances" because, had it not been for Wismar's arrest of Plaintiff on August 20, "the whole series of events may have never occurred." (Doc. No. 43 at 7.) Plaintiff also argues that a Missouri statute, which requires that persons arrested pursuant to a warrant be brought before an associate circuit judge, MO. REV. STAT. § 544.260, supports his contention that Wismar violated his due process rights, giving rise to the entire 62-day detention. (Doc. No. 43 at 11.) Wismar points out that this statute contains no time requirement. (Doc. No. 46 at 5.) Wismar also argues that even if the statute did contain such a time requirement, a violation of a state statue does not, in and of itself, constitute a constitutional violation. *See Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("We remain cautious not to turn every alleged state law violation into a constitutional claim. Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise.").

Plaintiff alleges that he was arrested around 7:00 p.m. on Saturday, August 20, 2011 and that he appeared in court two days later on Monday, August 22. (Doc. No. 1 at 15, 18.) Even if Plaintiff did not appear in court until the end of the day on Monday,

10

August 22, 2011, he would have only been detained in the custody of the Police Department for less than 48 hours before his initial appearance in court.  Plaintiff's detention of less than 48 hours before his initial court appearance, despite his alleged protests that he was not Corey Darmel Leonard, does not violate his substantive due process rights.  *See Baker*, 443 U.S. at 145-46.  Plaintiff further alleges that once he was afforded a hearing, he explained the mistaken identity to both the judge and prosecutor and that they agreed to release him from confinement.  (Doc. No. 1 at 6-7.)  Plaintiff was not in police custody during or after the hearing; rather, he was, by his own admission, in the custody of the Sheriff's Department and/or the Division of Corrections.  *Id.*  Therefore, any failure to implement a court-ordered release would not be attributable to Wismar because Plaintiff was in the custody of the Sheriff's Department and/or the Division of Corrections during and after the hearing.  Accordingly, Wismar did not deny Plaintiff access to the courts or detain him unreasonably and; therefore, did not violate Plaintiff's constitutional rights under the Fourteenth Amendment.

Wismar is entitled to qualified immunity on Plaintiff's claim that he was deprived of his Fourteenth Amendment right "not to be detained for an extended period of time without a court appearance" because Plaintiff has not alleged a constitutional violation against Wismar.  Consequently, the claims in Count II against Defendant Wismar are dismissed.

**Claims in Count II Against Board Members, Isom, and Leyshock**

Defendants argue that the Fourteenth Amendment claims against them in Count II should be dismissed because they are entitled to qualified immunity.  (Doc. No. 28 at 4.)

11

Plaintiff points out that qualified immunity is only available to public officials sued in their individual capacities, while these Defendants are sued only in their official capacities. (Doc. 32 at 5.) Plaintiff is correct. *See Campbell v. State of Iowa, Third Jud. Dist. Dep't of Corr. Servs.,* 702 F.3d 1140, 1141 (8th Cir. 2013); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Defendants then argue that a finding that the individual police officer defendants are entitled to qualified immunity in Count II "forecloses the possibility of municipal liability" against them. (Doc. 34 at 1.) This too is correct. *See Veatch,* 627 F.3d at 1257.

The Court has already found that Defendant Wismar is entitled to qualified immunity with respect to Count II. As alleged in the complaint, the actions of Defendants Eisele, James Doe, and Joseph Doe all took place prior to the August 22, 2011 hearing before Judge Hogan. By the time Judge Hogan entered an order of release, Plaintiff was no longer in custody of the Police Department. Thus, for the same reasons that Wismar is entitled to qualified immunity on the claims in Count II, so are Defendants Eisele, James Doe, and Joseph Doe.

"[I]f the [police officer] inflicted no constitutional injury on [plaintiff], it is inconceivable that the [city] could be held municipally liable to [plaintiff]." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); s*ee also Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005) (Municipalities cannot be held liable under § 1983 unless action pursuant to official municipal policy of some nature caused a constitutional tort.); *Palmore v. City of Pacific*, 851 F. Supp. 2d 1162, 1174 (E.D. Mo. 2010) ("[B]efore a municipality

can be held liable, there must be an unconstitutional act by the municipal employee or official.").

Because the individual Police Department Defendants are entitled to qualified immunity with respect to the Fourteenth Amendment claims raised in Count II, there can be no municipal liability for Board Members, Isom, and Leyshock with respect to Count II.

Thus, the claims in Count II against Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, Eisele, James Doe, and Joseph Doe are dismissed from this action with prejudice.

**Claims in Counts I and III Against Board Members, Isom, and Leyshock**

Defendants also seek dismissal of all claims against them in Counts I and III, arguing that Plaintiff cannot establish supervisory liability against them for failure to provide sufficient policies, training, and supervision. (Doc. 28 at 7.)

> To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right. If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation. Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with "deliberate indifference" to an individual's federal rights.

*Veatch*, 627 F.3d at 1257 (internal citations omitted). To be actionable under § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Moreover, a plaintiff must establish that there is "a pattern of similar constitutional violations" and that the governmental entity

13

has a history of causing the particular violations that he allegedly suffered. *Connick*, 131 S.Ct. at 1360.

Defendants argue that Plaintiff has not established the existence of such policies or patterns. In evaluating a motion to dismiss, however, the question is not what the plaintiff has "established," but rather what he has pleaded. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly,* 550 U.S. at 562 (quotation omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556.

Plaintiff has clearly alleged that each of these violations were committed as a result of the hiring, training, supervision, policies, customs, and practices, or lack thereof of the Board Members, Isom and Leyshock. (*See, e.g.*, Doc. 1 at 8, 21, 24-25.) At this point in the litigation, Plaintiff has not yet had the benefit of discovery to support his claims.

Accordingly, the motion of Defendants Board Members, Isom, and Leyshock to dismiss the claims against them in Counts I and III is denied.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that the motion of Defendant Andrew Wismar to dismiss is **GRANTED**. The "official capacity" claims against Wismar in Counts I, II, and III of Plaintiff's complaint are **DISMISSED** with prejudice. The "individual capacity" claims against Wismar in Count II are also **DISMISSED** with prejudice. (Doc. No. 36.)

**IT IS FURTHER ORDERED** that the motion of Defendants Slay, Irwin, Battle-Turner, Gray, Isom, and Leyshock is **GRANTED in part** and **DENIED in part**. The claims against them in Count II are **DISMISSED** with prejudice. The claims against them in Count I and Count III remain pending. (Doc. No. 27.)

**IT IS FURTHER ORDERED** that all claims in **COUNT II** against Defendants Eisele, James Doe, and Joseph Doe are **DISMISSED** with prejudice.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2013.