UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **CEDRIC M. WRIGHT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:12-cv-00107 AGF |
| ) | |
| **ST. LOUIS BOARD OF POLICE** ) | |
| **COMMISSIONERS et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS SHERIFF JAMES MURPHY,
THE ST. LOUIS CITY SHERIFF'S DEPARTMENT,
ST. LOUIS CITY DIVISION OF CORRECTIONS AND CHARLES BRYSON'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

Plaintiff Cedric Wright ("Wright") filed suit against Defendants Sheriff James W. Murphy ("Sheriff Murphy"), the St. Louis City Sheriff's Department ("Sheriff's Department"), St. Louis City Division of Corrections ("Corrections"), and Charles Bryson ("Bryson")(collectively, "Defendants"), as well as the St. Louis Metropolitan Police Department ("SLMPD"), alleging violations of his constitutional rights stemming from his August 20, 2011 arrest and subsequent incarceration in the City of St. Louis' Correctional System from August 21, 2011 through October 20, 2011. Defendants contend they are entitled to judgment as a matter of law in that there is no genuine dispute as to the material facts in this matter.

Wright's allegations against the Sheriff's Department are that it "is the governing body and the employer of Sheriff's employees for the City of St. Louis and is responsible for the training and supervision of Defendants James W. Murphy…Jerald Doe, Jackson

Doe and Jefferson Doe." Complaint [Doc. #1] at ¶ 37. Wright further alleges the Sheriff's Department failed to provide "sufficient policies, training, and supervision" to its employees, and that its alleged lack of policies violated Wright's constitutional rights. *Id*. at ¶¶ 91, 93.

Wright's allegations against Sheriff Murphy are only against him in his official capacity as Sheriff of the City of St. Louis and appear to be duplicative of the allegations against the Sheriff's Department. *Id*.

Wright's allegations against Corrections are that it "is the governing body and the employer for the Justice Center and Workhouse and is responsible for the training and supervision of Defendants Gene Stubblefield[1]...Justin Doe, and Jacob Doe." *Id*. at ¶ 39. Wright further alleges the Corrections failed to provide "sufficient policies, training, and supervision" to its employees, and that its alleged lack of policies violated Wright's constitutional rights. *Id*. at ¶¶ 91, 94.

Aside from being identified in the caption of the case as a defendant, there are no allegations specifically directed to Bryson in the Complaint. However, Bryson is named "in his official capacity as interim Commissioner of the Division of Corrections" which Defendants—for purposes of this motion—presume to be duplicative of the allegations against Corrections. *Id*.

---

[1] Defendants maintain that Gene Stubblefield is not a defendant in this lawsuit in that he was never served with process in this lawsuit, nor has any attorney entered their appearance on his behalf. Nonetheless, for the reasons set forth in this memorandum, the allegations against Gene Stubblefield are made solely in his official capacity and are therefore duplicative of the allegations against Corrections and Bryson.

Wright has substituted Deputy Sheriff Benjamin Goins, Jr. ("Deputy Goins")[2] for the previously-identified Jackson and Jefferson Does. As such, Wright's allegations against Deputy Goins are that he: (1) violated Wright's Fourth Amendment rights by unreasonably searching and seizing Wright relative to the August 20, 2011 arrest (Count I – official capacity); (2) violated Wright's Fourteenth Amendment rights by depriving him of due process of law after the arrest (Count II – official and individual capacity); and (3) committed the common law torts of false arrest and false imprisonment (Count IV – individual capacity).

Wright has also attempted to substitute Lieutenant Ruthann Alberti ("Lt. Alberti")[3] of the Sheriff's Department for the previously-identified Jerald Doe but, as of the date of this filing, the Court has not yet ruled on Wright's motion. The allegations in Counts I, II, and IV against Lt. Alberti are the same as those listed against Deputy Goins, above.

## II. Background

On or about August 20, 2011, Wright was arrested in the City of St. Louis by officers from SLMPD on the charge of petty larceny relative to the theft of beer and chips from a convenience store. Statement of Uncontroverted Material Facts ("SUMF") at ¶ 1. The petty larceny charge was ultimately refused by a municipal prosecutor in the City Counselor's Office. *Id*. at ¶ 2. The prosecutor's refusal notwithstanding, Wright admits

---

[2] Deputy Goins was never served with process in this lawsuit. As with Gene Stubblefield, for the reasons set forth in this memorandum, any claims against Deputy Goins in his official capacity are duplicative of those against the Sheriff's Department. Furthermore, Deputy Goins would be entitled to qualified immunity for any constitutional allegations, and official immunity for any common law allegations, against him in his individual capacity. In an abundance of caution, and solely for purposes of this motion, the allegations against Deputy Goins will be addressed as though he has been served with process in this lawsuit.

[3] For the reasons set forth in note 2, *infra*, in an abundance of caution, and solely for purposes of this motion, the allegations against Lt. Alberti/Jerald Doe will be addressed as though Lt. Alberti has been named substituted for Jerald Doe as a defendant and served with process in this lawsuit.

that he did, in fact, steal the beer and chips that led to his arrest on August 20, 2011. *Id*. at ¶ 3. While in SLMPD custody, Wright's pedigree information was run through the Regional Justice Information System ("REJIS"), and the alias "Corey Leonard" was returned as a result of the inquiry. *Id*. at ¶ 4. SLMPD Officer Andrew Wismar ("Officer Wismar") initially entered the name "Cedric Wright" through REJIS. *Id*. at ¶ 5. Because "Corey Leonard" was listed as Wright's alias in REJIS, Officer Wismar subsequently conducted a REJIS inquiry under the name Corey Leonard ("Leonard"). SUMF at ¶ 6. The "Corey Leonard" REJIS inquiry returned information that Leonard had outstanding warrants in the 22nd Judicial Circuit in the City of St. Louis. *Id*. at ¶ 7. Based on the Wright/Leonard association from REJIS, as well as the outstanding felony and misdemeanor warrants for Leonard, Officer Wismar conducted a further investigation and ultimately booked Wright on Leonard's three outstanding warrants. *Id*. at ¶ 8. In addition to the petty larceny charge for which Wright was originally arrested on August 20, 2011, he was also booked on three cases belonging to Leonard: (1) felony riverboat gambling, case no. 0922-CR00381-01; (2) felony stealing, case no. 0922-CR02343-01; and (3) misdemeanor receiving stolen property, case no. 0822-CR05202-01. *Id*. at ¶ 9.

After booking, Wright was transferred to SLMPD prisoner processing on the first floor of the City Justice Center ("CJC") and ultimately became a Sheriff's prisoner of cases 0922-CR00381-01, 0922-CR02343-01, and 0822-CR05202-01 at 05:18 on August 21, 2011. *Id*. at ¶ 10. Prior to 05:18 on August 21, 2011 Wright was a SLMPD prisoner over which the Sheriff's Department had no custody or control. SUMF at ¶ 11. Wright was housed at CJC in the care and custody of Corrections from 05:18 on August 21, 2011 until his initial court appearances for his cases on August 22, 2011. *Id*. at ¶ 12. Wright

4

was scheduled to appear in Division 26[4] on case no. 0822-CR05202-01, as well as Division 25 on case nos. 0922-CR00381-01 and 0922-02343-01 on August 22, 2011. *Id*. at ¶ 13. Wright was transferred from CJC to his court appearance in Division 26 on August 22, 2011 by Deputy Goins. *Id*. at ¶ 14. Wright did not ask Deputy Goins any questions on the way to court on August 22, 2011. *Id*. at ¶ 15. At the August 22, 2011 appearance, the Division 26 judge, Hon. Elizabeth Hogan ("Judge Hogan"), ordered Wright released on the misdemeanor case 0822-CR05202-01 due to the fact he was not the proper defendant in that case. SUMF at ¶ 16.

For reasons not unveiled through the course of discovery, and even though he was on the day's docket, Wright did not physically appear in Division 25 on August 22, 2011 on cases 0922-CR00381-01 and 0922-CR02343-01. *Id*. at ¶ 17. Sheriff's records indicate that case nos. 0922-CR00381-01 and 0922-CR02343-01 were continued by the Court on August 22, 2011 to a future date of September 30, 2011. *Id*. at ¶ 18. Prior to returning Wright to CJC, Deputy Goins would have delivered a copy of Judge Hogan's Order in case no. 0822-CR05202-01 to Lt. Alberti in the Sheriff's Criminal Records Unit for it to be processed. *Id*. at ¶ 19. Lt. Alberti is the highest-ranking Sheriff in the Criminal Records Unit. *Id*. at ¶ 20.

The Criminal Records Unit keeps track of Sheriff's prisoners moving to and from court and CJC. SUMF at ¶ 21. Typically after receiving an Order similar to Judge Hogan's Order in case no. 0822-CR05202-01, a Sheriff's employee in the Criminal Records Unit would make a computer entry of the disposition in said case into the Integrated Jail Management System ("IJMS") on the same day. *Id*. at ¶ 22. However,

---

[4] All courtrooms divisions referenced in this memorandum refer to courtroom divisions in the 22nd Judicial Circuit Court of the State of Missouri, City of St. Louis.

even with a Release Order on one case, any Sheriff's prisoner having additional cases pending without a disposition would remain in Sheriff's custody until further Court Order specifically on the outstanding case(s). *Id*. at ¶ 23. It is unclear whether a Sheriff's employee in the Criminal Records Unit made a disposition notation in IJMS on August 22, 2011 for Wright on case no. 0822-CR05202-01. *Id*. at ¶ 24. Regardless of whether a disposition notation in IJMS for Wright was made on August 22, 2011, he was still to remain in Sheriff's custody with valid judicial holds on case nos. 0922-CR00381-01 and 0922-CR02343-01. *Id*. at ¶ 25.

Sheriff's records do not indicate that Wright appeared in court on September 30, 2011. SUMF at ¶ 26. The Sheriff's Department does not transport prisoners based on dates on a custody card but instead relies on a daily list generated by the Circuit Clerk to transport prisoners in the event that a court date has been continued. *Id*. at ¶ 27.

Wright believed he was going to be released from jail after appearing before Judge Hogan on August 22, 2011 and did not ask Deputy Goins any questions when he was being returned from his court appearance to CJC. *Id*. at ¶ 28. Upon returning to intake at CJC, Wright may have asked Deputy Goins about the unresolved felony warrants in case nos. 0922-CR00381-01 and 0922-CR02343-01 when Wright first realized he was not being released on August 22, 2011, but he did not tell any Sheriff's personnel that he had been misidentified. *Id*. at ¶ 29. Due to the valid judicial holds on case nos. 0922-CR00381-01 and 0922-CR02343-01, Wright remained a Sheriff's prisoner pending disposition on those cases and was held at CJC from August 22, 2011 until he was transferred to the City's Medium Security Institute ("MSI") on August 24,

2011.  *Id*. at ¶ 30.  Wright did not speak to any Corrections personnel at CJC from August 22-24, 2011.  SUMF at ¶ 31.

Wright was identified as and called "Cedric Wright" by MSI personnel.  *Id*. at ¶ 32.  On August 24, 2011 at MSI, Wright was assigned a caseworker who met with him at his initial intake and allowed him to make a phone call to his sister.  *Id*. at ¶ 33.  Wright was able to contact his sister.  While he mentioned to his sister that he had felony charges pending, he did not mention to her that he had been mistakenly identified as Leonard.  *Id*. at ¶ 34.  Wright did not explain to his caseworker at MSI that he thought he was being held on cases that were not his own.  *Id*. at ¶ 35.

Wright was initially housed at MSI in a POD unit, which is a traditional two-person jail cell within a larger housing unit, from August 25, 2011 until he was placed in a general population dormitory-style housing unit on September 8, 2011.  SUMF at ¶ 36.  While at MSI, Corrections personnel provided Wright with a form to complete to see if he would qualify for a public defender, which he filled out, but Wright did not qualify.  *Id*. at ¶ 37.  While initially housed in the POD unit, Wright did not attempt to engage any Corrections personnel about him being held on Leonard's cases.  *Id*. at ¶ 38.

While at MSI, Wright attempted on at least five occasions to place a collect call to his sister but was never able to make a connection with her.  *Id*. at ¶ 39.  Wright was never denied telephone access from any Corrections personnel.  *Id*. at ¶ 40.  Wright also attempted on at least five occasions to contact the Public Defender's Office but was only connected on one occasion.  SUMF at ¶ 41.  Wright could not get any answers or assistance from the Public Defender's Office.  *Id*. at ¶ 42.  While housed in the dormitory-style unit at MSI, Wright had access to two pay telephones for inmates to use.

7

*Id*. at ¶ 43. After one week in the dormitory-style unit, Wright stopped trying to place collect phone calls. *Id*. at ¶ 44.

On only one occasion thereafter did Wright inquire about his cases to Corrections personnel. *Id*. at ¶ 45. Wright claims he spoke with an African-American Corrections Officer ("CO") that he would probably not be able to recognize. SUMF at ¶ 46. Wright claims the CO looked up Wright's information and indicated to him he should not be at MSI on Leonard's cases. *Id*. at ¶ 47. However, Wright did not ask the CO about a court date, nor did he ask the CO to contact a lawyer for him. *Id*. at ¶ 48.

Wright was never denied access to visitors by any Corrections or Sheriff's personnel. *Id*. at ¶ 49. Wright was never denied access to the telephone by any Sheriff's personnel. *Id*. at ¶ 50. Wright was never denied access to mail service by any Corrections or Sheriff's personnel. SUMF at ¶ 51. Wright never specifically told any Corrections or Sheriff's personnel that he was not Leonard and should not be incarcerated on Leonard's cases. *Id*. at ¶ 52. Wright was never denied access to his caseworker at MSI and understood that if he wanted to see his caseworker that he could do so. *Id*. at ¶ 53. Wright never asked any Corrections personnel for a form to complete in order to explain that he was not Leonard and should not be held on his cases. *Id*. at ¶ 54. Wright was never denied access by any Corrections personnel to avail himself to the grievance process for inmates at MSI. *Id*. at ¶ 55.

Wright did not have any contact with Bryson throughout his incarceration. SUMF at ¶ 56. Bryson never held the position of Interim Commissioner of the Division of Corrections. *Id*. at ¶ 57. Wright did not have any contact with Eugene Stubblefield ("Stubblefield") throughout his incarceration. *Id*. at ¶ 58. Wright did not have any

contact with Sheriff Murphy throughout his incarceration. *Id*. at ¶ 59. Wright did not have any contact with Lt. Alberti throughout his incarceration. *Id*. at ¶ 60.

On or about October 16, 2011, on advice from a fellow inmate at MSI, Wright wrote a letter to Mary Fox of the Public Defender's Office ("Fox") explaining his situation to her. SUMF at ¶ 61. On October 20, 2011, Wright appeared in Division 16 and met Fox, who was able to explain Wright's situation to Hon. John Garvey ("Judge Garvey"). *Id*. at ¶ 62. On October 20, 2011, Judge Garvey issued a Release Order for Wright on case nos. 0922-CR00381-01, 0922-CR02343-01, and 0822-CR05202-01. *Id*. at ¶ 63. With no valid judicial holds for Wright remaining, he was released from custody on October 20, 2011. *Id*. at ¶ 64.

## III.  Standard of Review

The standards governing a Motion for Summary Judgment are well settled. Pursuant to FED.R.CIV.P. 56(c), a court may grant a Motion for Summary Judgment if all of the information before the court demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden initially is on the moving party. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth the specific facts showing that there is sufficient evidence in its favor to allow the trier of fact to return a verdict for it. FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986). The non-moving plaintiff may not rely on allegations of the pleadings. *Griffin v. Hilke*, 804 F.2d 1052, 1055, n.1 (8th Cir. 1986).

IV.   **Argument**

    A.   **Count I – Fourth Amendment**

In Count I, Wright alleges that Defendants (in their official capacities), as well as Lt. Alberti/Jerald Doe and Deputy Goins (in their individual capacities) subjected him to an unlawful and unjustified search and seizure relative to Wright's August 20, 2011 arrest. Complaint at ¶¶ 96-98. However, the uncontroverted material facts demonstrate that the Sheriff's Department did not take custody of Wright until *after* he was processed by SLMPD. SUMF at ¶¶ 10-12. Furthermore, Deputy Goins only encounter with Wright took place on August 22, 2011. *Id*. at ¶ 14. Additionally, Wright did not have any contact with Lt. Alberti throughout his incarceration. *Id*. at ¶ 60. Wright never had any contact with Bryson or Stubblefield during his incarceration, either. *Id*. at ¶¶ 56-58.

Resolving a claim of qualified immunity is a two-part inquiry. "The first question is whether the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional right." *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Based on the uncontroverted material facts set forth above, Lt. Alberti/Jerald Doe and Deputy Goins are entitled to qualified immunity on the claims against them in Count I, as they had no involvement whatsoever in Wright's August 20, 2011 arrest and therefore could not have violated Wright's constitutional right as alleged in Count I.

"If a person has suffered has suffered no constitutional injury at the hands of the individual…the fact that the [government's] regulations might have *authorized* the use of

10

constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (Emphasis in original.); *see also Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005) (Municipalities cannot be held liable under § 1983 unless action pursuant to official municipal policy of some nature caused a constitutional tort.); *Palmore v. City of Pacific*, 851 F. Supp. 2d 1162, 1174 (E.D. Mo. 2010) ("[B]efore a municipality can be held liable, there must be an unconstitutional act by the municipal employee or official."). Because Lt. Alberti/Jerald Doe and Deputy Goins are entitled to qualified immunity in their individual capacities with respect to the Fourth Amendment claims raised in Count I, there can be no municipal liability for the Sheriff's Department or Corrections.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing government entity." *Veatch v. Bartels Lutheren Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, any remaining allegations in Count I against Sheriff Murphy, Lt. Alberti/Jerald Doe, Deputy Goins, Bryson, and Stubblefied in their official capacities should be dismissed as duplicative against the Sheriff's Department and/or Corrections.

### B. Count II – Fourteenth Amendment

In Count II, Wright alleges that Defendants (in their official capacities), as well as Lt. Alberti/Jerald Doe and Deputy Goins (in their individual capacities) violated his constitutional right to due process under the Fourteenth Amendment not to be detained for an extended period of time without a court appearance. Complaint at ¶¶ 110-112.

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released… The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty

accomplished 'without due process of law.' *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

The Constitution does not require the government to "investigate every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id*. at 146. "Nor is the official charged with maintaining custody of the accused name in the warrant required by the Constitution to perform an error-free investigation of such a claim." *Id*. "The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." *Id*. "[W]here the wrong person was arrested under a valid warrant and a delay occurred before the release[,] we have required proof that the § 1983 defendant was deliberately indifferent to the plaintiff's right to be released; evidence of merely negligent or unreasonable conduct was not sufficient to establish liability in these cases." *Goldberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005). A plaintiff must prove that the § 1983 defendants acted with criminal recklessness to establish they were deliberately indifferent to the plaintiff's constitutional rights. *Id*. at 812. A § 1983 claim against a municipal defendant fails absent evidence that an individual municipal employee took an action that deprived plaintiff of his constitutional rights. *Id*. at 813; *see Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92; *Doran v. Eckhold*, 409 F.3d 958, 967 (8th Cir. 2005) (en banc).

"A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell*, 420 F.3d at 847. As a threshold matter, "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. at 848 (*citing City of Canton v. Harris*, 489 U.S. 378, 385). "This requires a plaintiff to show that the

municipal policy was 'the moving force [behind] the constitutional violation.'" *Id*. (*citing Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8 th Cir. 1999) (*quoting Monell*, 436 U.S. at 694). "Accordingly, [a plaintiff] must show that [municipal] policy caused or was highly likely to cause his prolonged detention." *Id*. A "single instance of allegedly failing to follow official policy may rise to the level of negligence." *Id*. "It does not, however, suffice to establish causation as required to advance a claim of municipal liability under § 1983." *Russell*, 420 F.3d at 848. A § 1983 municipal defendant "may not be found to have been deliberately indifferent to or have tacitly authorized conduct of which it was not aware." *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 659 (8th Cir. 2001).

### 1. Lt. Alberti/Jerald Doe and Deputy Goins – Individual Capacity

The uncontroverted material facts demonstrate that the only Sheriff's personnel that had any personal contact with Wright during his incarceration was Deputy Goins. SUMF at ¶¶ 14, 15, 19, 28, & 29. Furthermore, Deputy Goins performed the limited role of taking Wright to court from CJC on the morning of August 22, 2011 and returning him to CJC thereafter. *Id*. at ¶¶ 14 & 28. Notably, Wright did not at any time protest in any manner to Deputy Goins that he was not in fact Leonard. *Id*. at ¶¶ 15 & 29. Wright did not have any contact with Lt. Alberti throughout his incarceration. *Id*. at ¶ 60.

The uncontroverted material facts establish that Wright never made Deputy Goins aware of the fact that Wright was not Leonard. Deputy Goins performed his duties on August 22, 2011 in transporting Wright to and from CJC to court. Wright therefore cannot even establish that Deputy Goins was negligent on August 22, 2011, let alone that Deputy Goins actions were criminally reckless.

Additionally, since Lt. Alberti/Jerald Doe did not have any contact with Wright during his incarceration, Wright's allegation that "despite Plaintiff's repeated protests that he was not Corey Darmel Leonard…" Lt. Alberti/Jerald Doe "took Plaintiff into custody of the St. Louis Sheriff's Department…and transported Plaintiff to a holding cell…" is not supported by any evidence in the record. Complaint at ¶ 11. If anything, the uncontroverted material facts establish that a Sheriff's employee in the Criminal Records Unit may have failed to make an IJMS entry to reflect Wright's release from case no. 0822-CR05202-01 on August 22, 2011. SUMF at ¶ 24. However, even if that entry was not made on August 22, 2011, Wright still would have remained in Sheriff's custody with valid judicial holds on case nos. 0922-CR00381-01 and 0922-CR02343-01. *Id*. at ¶ 25.

Assuming *arguendo* that no entry was made on August 22, 2011, that omission would be a single instance of allegedly failing to follow official policy that, at most, would rise to the level of negligence.

Resolving a claim of qualified immunity is a two-part inquiry. "The first question is whether the facts, taken in a light most favorable to the party alleging an injury, show a violation of a constitutional right." *Treats*, 308 F.3d at 871. "If the answer is yes, the next question is whether that right was so clearly established that it would have been 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*. at 871-72 (*quoting Saucier*, 533 U.S. at 202). "This second question is a fact-intensive inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (*quoting Saucier*, 533 U.S. at 201).

Based on the uncontroverted material facts set forth above, Lt. Alberti/Jerald Doe and Deputy Goins are entitled to qualified immunity on the claims against them in Count II. Lt. Alberti/Jerald Doe Wright did not have any contact with Lt. Alberti throughout his incarceration and therefore could not have violated Wright's constitutional right as alleged in Count II. *Id*. at ¶ 60. Deputy Goins is entitled to qualified immunity because Wright never made him aware of the mistaken identity issue during their interaction.

### 2. Sheriff's Department and Corrections – Official Capacity

Because Lt. Alberti/Jerald Doe and Deputy Goins are entitled to qualified immunity in their individual capacities with respect to the Fourteenth Amendment claims raised in Count II, there can be no municipal liability for the Sheriff's Department or Corrections.

### 3. Individual Defendants – Official Capacity

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing government entity." *Veatch*, 627 F.3d at 1257. Therefore, any remaining allegations in Count II against Sheriff Murphy, Lt. Alberti/Jerald Doe, Deputy Goins, Bryson, and Stubblefied in their official capacities should be dismissed as duplicative against the Sheriff's Department and/or Corrections.

## C. Count III – Fourteenth Amendment: Excessive Force

Defendants are not named individually or officially in Count III and therefore will not brief this issue to the Court.

## D. Count IV – False Arrest and False Imprisonment

In Count IV, Wright alleges that Lt. Alberti/Jerald Doe and Deputy Goins (in their individual capacities) committed the common law torts of false arrest and false

15

imprisonment as a result of his 2011 incarceration. For the reasons set forth above, Wright cannot establish any constitutional tort under § 1983, nor can he establish that Lt. Alberti/Jerald Doe had any contact with Wright during his incarceration. SUMF at ¶ 60. Nor can he establish that Deputy Goins conduct was criminally reckless so as to be deliberately indifferent to his constitutional rights. *Id*. at ¶¶ 14, 15, 19, 28, & 29.

Defendants urge the Court not to exercise pendant jurisdiction over the common law claims and dismiss them without prejudice. However, should the Court in its discretion exercise pendant jurisdiction over the common law claims, Lt. Alberti/Jerald Doe and Deputy Goins would be entitled to official immunity on the common law claims in the same manner that they are entitled to qualified immunity under the constitutional claims.

Furthermore, to the extent Wright would seek to hold the Sheriff's Department or Corrections liable on the common law claims (Defendants contend that has not been pled in Count IV), the municipal defendants would be entitled to Sovereign Immunity as provided in §§ 537.600, *et seq*. RSMo.

## V.     Conclusion

For the reasons stated herein, as well as those in Defendants' Motion for Summary Judgment, Defendants are entitled to summary judgment on all counts in both individual and official capacities. There is no genuine dispute as to the material facts and Defendants are therefore entitled to judgment as a matter of law.

Respectfully submitted,
PATRICIA A. HAGEMAN
CITY COUNSELOR

/s/ Daniel J. Emerson
Daniel J. Emerson     #56808 MO
Associate City Counselor
Attorney for Defendants Sheriff's Department, Sheriff Murphy, Corrections, and Bryson
Room 314, City Hall
St. Louis, MO  63103
314.622.3361
FAX: 314.622.4956
EmersonD@stlouis-mo.gov

**Certificate of Service**

I hereby certify that on September 16, 2013, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

James O. Hacking, III
Jennifer L. Shoulberg
HACKING LAW PRACTICE, LLC
34 N. Gore, Suite 101
Saint Louis, MO  63119
Attorneys for Plaintiff

Karin A. Schute
Christopher A. Hoell
Assistant Attorney Generals
P.O. Box 861
Saint Louis, MO  63188
Attorney for Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock and Wismar

/s/ Daniel J. Emerson