UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **CEDRIC M. WRIGHT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:12-cv-00107 AGF |
| | ) |
| **ST. LOUIS BOARD OF POLICE** | ) |
| **COMMISSIONERS et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS SHERIFF JAMES MURPHY, THE ST. LOUIS CITY SHERIFF'S DEPARTMENT, ST. LOUIS CITY DIVISION OF CORRECTIONS AND CHARLES BRYSON'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. On or about August 20, 2011, Plaintiff Cedric Wright ("Wright") was arrested in the City of St. Louis by officers from the St. Louis Metropolitan Police Department ("SLMPD") on the charge of petty larceny relative to the theft of beer and chips from a convenience store. Exhibit A (Wright Deposition Tr.) at pp. 60-62.

2. The petty larceny charge was ultimately refused by a municipal prosecutor in the City Counselor's Office. Exhibit B (St. Louis City Municipal Court disposition record of *City of St. Louis v. Cedric Wright*, Case No. R00050532-A).

3. The prosecutor's refusal notwithstanding, Wright admits that he did, in fact, steal the beer and chips that led to his arrest on August 20, 2011. Ex. A. at p. 63: 21-23.

4. While in SLMPD custody, Wright's pedigree information was run through the Regional Justice Information System ("REJIS"), and the alias "Corey Leonard" was

returned as a result of the inquiry. Exhibit C (SLMPD Officer Andrew Wismar ["Officer Wismar"] Deposition Tr.) at pp. 21-23.

5. Officer Wismar initially entered the name "Cedric Wright" through REJIS. *Id*. at p. 25: 15-18.

6. Because "Corey Leonard" was listed as Wright's alias in REJIS, Officer Wismar subsequently conducted a REJIS inquiry under the name Corey Leonard ("Leonard"). *Id*. at pp. 26: 12 – 27: 12.

7. The "Corey Leonard" REJIS inquiry returned information that Leonard had outstanding warrants in the 22nd Judicial Circuit in the City of St. Louis. *Id*. at pp. 25-27.

8. Based on the Wright/Leonard association from REJIS, as well as the outstanding felony and misdemeanor warrants for Leonard, Officer Wismar conducted a further investigation and ultimately booked Wright on Leonard's three outstanding warrants. *Id*. at pp. 109-14.

9. In addition to the petty larceny charge for which Wright was originally arrested on August 20, 2011, he was also booked on three cases belonging to Leonard: (1) felony riverboat gambling, case no. 0922-CR00381-01; (2) felony stealing, case no. 0922-CR02343-01; and (3) misdemeanor receiving stolen property, case no. 0822-CR05202-01. Exhibit D (Integrated Jail Management System ["IJMS"] Inmate Long Profile for Wright) at p. 2.

10. After booking, Wright was transferred to SLMPD prisoner processing on the first floor of the City Justice Center ("CJC") and ultimately became a Sheriff's

prisoner of cases 0922-CR00381-01, 0922-CR02343-01, and 0822-CR05202-01 at 05:18 on August 21, 2011. *Id*. at p.3; Exhibit E (LaVerta Barnes Deposition Tr.) at p. 15: 9-12.

11. Prior to 05:18 on August 21, 2011 Wright was a SLMPD prisoner over which the Sheriff's Department had no custody or control. Ex. D at page 3; Exhibit F (Michael Guzy Deposition Tr.) at p. 75: 7-22.

12. Wright was housed at CJC in the care and custody of the St. Louis City Division of Corrections ("Corrections") from 05:18 on August 21, 2011 until his initial court appearances for his cases on August 22, 2011. Ex. D at page 3.

13. Wright was scheduled to appear in Division 26[1] on case no. 0822-CR05202-01, as well as Division 25 on case nos. 0922-CR00381-01 and 0922-02343-01 on August 22, 2011. Exhibit G (St. Louis City Sheriff's Custody Card).

14. Wright was transferred from CJC to his court appearance in Division 26 on August 22, 2011 by Deputy Sheriff Benjamin Goins, Jr. ("Deputy Goins"). Exhibit H (Sheriff's Responses to Plaintiff's First Set of Interrogatories) Responses to Interrogatories 5 & 7; Exhibit I (Deputy Goins Deposition Tr.) at pp. 20-21.

15. Wright did not ask Deputy Goins any questions on the way to court on August 22, 2011. Ex. A at p. 76: 19-21.

16. At the August 22, 2011 appearance, the Division 26 judge, Hon. Elizabeth Hogan ("Judge Hogan"), ordered Wright released on the misdemeanor case 0822-CR05202-01 due to the fact he was not the proper defendant in that case. Exhibit J (August 22, 2011 Court Order in case no. 0822-CR05202-01).

---

[1] All courtrooms divisions referenced in the Statement of Uncontroverted Material Facts refer to courtroom divisions in the 22nd Judicial Circuit Court of the State of Missouri, City of St. Louis.

17. For reasons not unveiled through the course of discovery, and even though he was on the day's docket, Wright did not physically appear in Division 25 on August 22, 2011 on cases 0922-CR00381-01 and 0922-CR02343-01. Ex. A at pp. 76-77.

18. Sheriff's records indicate that case nos. 0922-CR00381-01 and 0922-CR02343-01 were continued by the Court on August 22, 2011 to a future date of September 30, 2011. Ex. G.

19. Prior to returning Wright to CJC, Deputy Goins would have delivered a copy of Judge Hogan's Order in case no. 0822-CR05202-01 to Lieutenant Ruthann Alberti ("Lt. Alberti") in the Sheriff's Criminal Records Unit for it to be processed. Ex. I at pp. 21-22.

20. Lt. Alberti is the highest-ranking Sheriff in the Criminal Records Unit. Exhibit K (Lt. Alberti Deposition Tr.) at p. 14: 8-10.

21. The Criminal Records Unit keeps track of Sheriff's prisoners moving to and from court and CJC. *Id*. at p. 14: 11-12.

22. Typically after receiving an Order similar to Judge Hogan's Order in case no. 0822-CR05202-01, a Sheriff's employee in the Criminal Records Unit would make a computer entry of the disposition in said case into IJMS on the same day. *Id*. at pp. 21-22.

23. However, even with a Release Order on one case, any Sheriff's prisoner having additional cases pending without a disposition would remain in Sheriff's custody until further Court Order specifically on the outstanding case(s). *Id*. at p. 21: 6-10.

24. It is unclear whether a Sheriff's employee in the Criminal Records Unit made a disposition notation in IJMS on August 22, 2011 for Wright on case no. 0822-CR05202-01. *Id*. pp. 39-40.

25. Regardless of whether a disposition notation in IJMS for Wright was made on August 22, 2011, he was still to remain in Sheriff's custody with valid judicial holds on case nos. 0922-CR00381-01 and 0922-CR02343-01. Ex. K at pp. 43-45.

26. Sheriff's records do not indicate that Wright appeared in court on September 30, 2011. Ex. G.

27. The Sheriff's Department does not transport prisoners based on dates on a custody card but instead relies on a daily list generated by the Circuit Clerk to transport prisoners in the event that a court date has been continued. Ex. K at pp. 37: 22 – 38: 12.

28. Wright believed he was going to be released from jail after appearing before Judge Hogan on August 22, 2011 and did not ask Deputy Goins any questions when he was being returned from his court appearance to CJC. Ex. A at pp. 81-82.

29. Upon returning to intake at CJC, Wright may have asked Deputy Goins about the unresolved felony warrants in case nos. 0922-CR00381-01 and 0922-CR02343-01 when Wright first realized he was not being released on August 22, 2011, but he did not tell any Sheriff's personnel that he had been misidentified. *Id*. at pp. 85-86.

30. Due to the valid judicial holds on case nos. 0922-CR00381-01 and 0922-CR02343-01, Wright remained a Sheriff's prisoner pending disposition on those cases and was held at CJC from August 22, 2011 until he was transferred to the City's Medium Security Institute ("MSI") on August 24, 2011. *Id*. at pp. 86-88; Ex. D at p. 3.

31. Wright did not speak to any Corrections personnel at CJC from August 22-24, 2011. *Id*. at p. 87: 2-19.

32. Wright was identified as and called "Cedric Wright" by MSI personnel. *Id*. at p. 89: 7-14.

33. On August 24, 2011 at MSI, Wright was assigned a caseworker who met with him at his initial intake and allowed him to make a phone call to his sister. Ex. A at pp. 90-91.

34. Wright was able to contact his sister. While he mentioned to his sister that he had felony charges pending, he did not mention to her that he had been mistakenly identified as Leonard. *Id*. at p. 91: 3-21.

35. Wright did not explain to his caseworker at MSI that he thought he was being held on cases that were not his own. *Id*. at p. 93: 14-16.

36. Wright was initially housed at MSI in a POD unit, which is a traditional two-person jail cell within a larger housing unit, from August 25, 2011 until he was placed in a general population dormitory-style housing unit on September 8, 2011. Ex. A pp. 94-95, 101-02; Ex. D at p. 3.

37. While at MSI, Corrections personnel provided Wright with a form to complete to see if he would qualify for a public defender, which he filled out, but Wright did not qualify. Ex. A at p. 92: 12-23.

38. While initially housed in the POD unit, Wright did not attempt to engage any Corrections personnel about him being held on Leonard's cases. *Id*. at pp. 95-96.

39. While at MSI, Wright attempted on at least five occasions to place a collect call to his sister but was never able to make a connection with her. *Id*. at p. 97: 1-14.

40. Wright was never denied telephone access from any Corrections personnel. *Id*. at pp. 97: 23 – 98: 1; p. 112: 20-22.

41. Wright also attempted on at least five occasions to contact the Public Defender's Office but was only connected on one occasion. *Id*. at pp. 99-100.

42. Wright could not get any answers or assistance from the Public Defender's Office. Ex. A at p. 101: 6-12.

43. While housed in the dormitory-style unit at MSI, Wright had access to two pay telephones for inmates to use. *Id*. at pp. 102: 22 – 103: 2.

44. After one week in the dormitory-style unit, Wright stopped trying to place collect phone calls. *Id*. at p. 103: 13-19.

45. On only one occasion thereafter did Wright inquire about his cases to Corrections personnel. *Id*. at p. 104: 1-7.

46. Wright claims he spoke with an African-American Corrections Officer ("CO") that he would probably not be able to recognize. *Id*. at p. 105: 5-18.

47. Wright claims the CO looked up Wright's information and indicated to him he should not be at MSI on Leonard's cases. Ex. A at pp. 105-06.

48. Wright did not ask the CO about a court date, nor did he ask the CO to contact a lawyer for him. *Id*. at p. 107: 3-11.

49. Wright was never denied access to visitors by any Corrections or Sheriff's personnel. *Id*. at p. 112: 13-19.

50. Wright was never denied access to the telephone by any Sheriff's personnel. *Id*. at p. 112: 20-24.

51. Wright was never denied access to mail service by any Corrections or Sheriff's personnel. *Id*. at p. 113: 12-17.

52. Wright never specifically told any Corrections or Sheriff's personnel that he was not Leonard and should not be incarcerated on Leonard's cases. Ex. A at pp. 116-17.

53. Wright was never denied access to his caseworker at MSI and understood that if he wanted to see his caseworker that he could do so. *Id*. at p. 118: 4-9.

54. Wright never asked any Corrections personnel for a form to complete in order to explain that he was not Leonard and should not be held on his cases. *Id*. at pp. 118: 23 – 119: 2.

55. Wright was never denied access by any Corrections personnel to avail himself to the grievance process for inmates at MSI. *Id*. at p. 119: 3-6.

56. Wright did not have any contact with Charles Bryson ("Bryson") throughout his incarceration. *Id*. at pp. 113: 18 – 114: 2.

57. Bryson never held the position of Interim Commissioner of the Division of Corrections. Exhibit L (Bryson Deposition Tr.) at p. 17: 12-16.

58. Wright did not have any contact with Eugene Stubblefield throughout his incarceration. Ex. A at p. 114: 3-7.

59. Wright did not have any contact with Sheriff James Murphy throughout his incarceration. *Id*. at p. 114: 10-12.

60. Wright did not have any contact with Lt. Alberti throughout his incarceration. *Id*. at p. 115: 6-9.

61. On or about October 16, 2011, on advice from a fellow inmate at MSI, Wright wrote a letter to Mary Fox of the Public Defender's Office ("Fox") explaining his situation to her. *Id*. at p. 111: 6-25.

62. On October 20, 2011, Wright appeared in Division 16 and met Fox, who was able to explain Wright's situation to Hon. John Garvey ("Judge Garvey"). *Id*. at pp. 124-27.

63. On October 20, 2011, Judge Garvey issued a Release Order for Wright on case nos. 0922-CR00381-01, 0922-CR02343-01, and 0822-CR05202-01. Ex. A at p. 127: 1-4.

64. With no valid judicial holds for Wright remaining, he was released from custody on October 20, 2011. *Id*. at p. 127: 1-14; Ex. D at p. 3-5.

Respectfully submitted,
PATRICIA A. HAGEMAN
CITY COUNSELOR

/s/ Daniel J. Emerson
Daniel J. Emerson     #56808 MO
Associate City Counselor
Attorney for Defendants Sheriff's
Department, Sheriff Murphy, Corrections,
and Bryson
Room 314, City Hall
St. Louis, MO  63103
314.622.3361
FAX: 314.622.4956
EmersonD@stlouis-mo.gov

**Certificate of Service**

I hereby certify that on September 16, 2013, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

James O. Hacking, III
Jennifer L. Shoulberg
HACKING LAW PRACTICE, LLC
34 N. Gore, Suite 101
Saint Louis, MO 63119
Attorneys for Plaintiff

Karin A. Schute
Christopher A. Hoell
Assistant Attorney Generals
P.O. Box 861
Saint Louis, MO 63188
Attorney for Defendants Slay, Irwin,
Battle-Turner, Gray, Isom, Leyshock and Wismar

                                        /s/ Daniel J. Emerson