UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CEDRIC M. WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12CV107AGF |
| | ) | |
| ST. LOUIS BOARD OF POLICE | ) | |
| COMM'RS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Francis Slay, Jr., Thomas Irwin, Bettye Battle-Turner, Richard H. Gray, Daniel Isom, Gerald Leyshock, and Andrew Wismar, by and through counsel, for their reply brief in support of their motion for summary judgment state as follows:

## I. The Court should grant summary judgment in favor of Wismar on Wright's Fourth Amendment claims.

This Court should grant summary judgment in favor of Wismar on Counts I and III because the undisputed facts demonstrate that Wismar did not violate Wright's Fourth Amendment rights in that Wismar had probable cause to arrest Wright for petty larceny and Wismar only used *de minimis* force to effectuate the arrest. In the alternative, Wismar is entitled to qualified immunity.

1

### A. Wismar had probable cause to arrest Wright.

Wismar had probable cause to arrest Wright for petty larceny on August 20, 2011 based upon the description of the suspect he received from the Dispatcher and the positive identification by the gas station clerk. Doc. 98-3 at 32-33, 35-40; Doc. 115-25 at 6. Wright does not dispute the law or the facts cited in Defendants' memorandum in support of summary judgment with regard to this issue. Consequently, this Court should grant summary judgment in favor of Wismar on Count I.

### 1. Even if Wismar mistakenly booked Wright on the outstanding warrants, Wismar is entitled to qualified immunity because he did not violate a clearly established constitutional right.

Wright has failed to allege a constitutional injury as a result of being booking on Corey Leonard's warrants because the protections of the Fourth Amendment do not extend to the booking process if there was probable cause for the arrest. Even if the protections of the Fourth Amendment do extend to the booking process, Wismar is entitled to qualified immunity. The Fourth Amendment permits police officers to: conduct brief investigatory stops where there is "a reasonable, articulable suspicion that criminal activity is afoot" and make warrantless arrests based upon probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *Hill*, 349 F.3d at 1072. Furthermore, the Supreme Court has held that the protections of the Fourth Amendment do

not extend to the booking of a suspect following a lawful arrest. *See Baker v. McCollan*, 443 U.S. 137, 137, 143-44 (1979) (Court held that plaintiff's mistaken booking on a facially valid warrant did not give rise to a Fourth Amendment violation despite plaintiff's repeated protests that the warrant was not his). Consequently, any alleged unreasonable seizure of Wright could only have occurred when Wismar initially detained Wright or arrested Wright for petty larceny; Wright could not have been "re-seized" during the booking. *See Garionis v. Newton*, 827 F.2d 306, 310 (8th Cir. 1987) (A person that is under arrest in police custody cannot be "rearrested.").

Here, Wright has not attacked the validity of the warrants[1] under which he was booked; instead he argues that he was misidentified and wrongfully detained as a result. *See* Doc. 1 at ¶ 97. Accordingly, Wright's complaint about being booked on Leonard's warrants is not a constitutional claim. *See Baker*, 443 U.S. at 142. Consequently, Wright has failed to allege

---

[1] Nowhere in his Complaint does Wright allege that these warrants were invalid because probable cause was lacking or the probable cause was based upon information the submitting officer knew was false. Furthermore, Wright's attempt to attack the validity of the warrants in his response in opposition fails because his arguments rely on Exhibits 75, 76, 81, 82, 83, and 84, which are inadmissible because they lack business records affidavits and constitute inadmissible hearsay.

a constitutional violation that resulted from Wismar's decision to book Wright on the outstanding warrants.[2]

Even if the booking of Wright under the warrants does give rise to a Fourth Amendment claim, Wismar is entitled to qualified immunity because he reasonably believed that the warrants were for Wright. A police officer who is making an arrest pursuant to warrant is not "required by the Constitution to investigate independently every claim of innocence." *Baker*, 443 U.S. at 145. Further, "an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to a facially-valid warrant for a few days does not amount to a constitutional violation." *Kennell v. Gates*, 215 F.3d 825, 828 (8th Cir. 2000) (citing *Baker*, 443 U.S. at 145-46; *Lane v. Sarpy Co.*, 165 F.3d 623, 624 (8th Cir. 1999)).

Wismar had an objectively reasonable basis for arresting Wright and booking him on the warrants because he performed a thorough investigation into Wright's identity by searching REJIS for the criminal history of Wright and Leonard and by comparing their photographs. *See Young*, 249 F.3d at

---

[2] In his response in opposition, Wright also argues that there is an issue of fact as to whether or not Wright was booked on the petty larceny charge. Doc. 117 at 29-31. This argument fails because the protections of the Fourth Amendment do not extend to the booking process. Furthermore, whether or not Wright was booked on the petty larceny charge is immaterial to summary judgment.

734 (officer had an objectively reasonable basis for arresting plaintiff after his car computer showed there was a warrant for her arrest and he verified that information over the radio).

The Eighth Circuit's holding in *Kennell* does not govern the case at hand because in *Kennell* there was evidence that the officer received an internal message from a fingerprint technician informing her that she had the wrong person in custody and she failed to act upon that information. *Id.* at 829. Here, there was no alias notification/correct LID email generated as a result of Wright's arrest on August 20, 2011. Further, there is not any other evidence from which an inference can be drawn that Wismar had actual knowledge that Wright was being wrongfully detained as Leonard.

Wright argues that Wismar had information in his possession (the LID numbers of Wright and Leonard) that would have told him that he had the wrong person in custody (Doc. 117 at 31); however, Wismar testified that he has never used an LID number to identify a person. Doc. 115-24 at 6. At worst, Wismar's failure to compare the two LID numbers amounts to negligence, but it does not amount to deliberate indifference. *See Kennell*, 215 F.3d at 829. Consequently, there is no evidence from which a reasonable inference can be drawn that Wismar had actual knowledge that the warrants did not belong to Wright.

### B. Wright's Complaint does not allege a Fourth Amendment violation based upon the handcuffing of Wright during the initial stop.

In Wright's response in opposition to summary judgment, he argues that there is a genuine issue of material fact as to whether handcuffing Wright during the investigative stop was objectively reasonable. Doc. 117 at 26-29. However, Wright has not pled this new theory of liability. *See* Doc. 1 at ¶¶ 96-109. When responding in opposition to a motion for summary judgment, the plaintiff cannot assert a new theory of liability or expand his claims in an attempt to create a material issue of fact where none existed before in an effort to defeat summary judgment. *Kellar v. Wills*, 186 Fed. App'x 714, 716 (8th Cir. 2006) (citing *Woods v. Wills*, 400 F.Supp.2d 1145, 1186 (E.D. Mo. 2005)).

Nowhere in his Complaint does Wright allege that Wismar lacked reasonable suspicion to stop Wright in Fox Park or that it was objectively unreasonable to handcuff Wright while transporting him to the gas station for a show-up identification. *See* Doc. 1 at ¶ 97. Accordingly, this new claim is not properly before the Court and should not be considered in response to summary judgment. *See Kellar*, 186 Fed. App'x at 716.

### 1. Wismar acted objectively reasonably in handcuffing Wright while transporting him to the gas station for a show-up identification.

Even if Wright's complaint does allege a claim based upon Wismar's handcuffing of Wright while transporting him to the gas station for a show-up identification, the undisputed material facts demonstrate that Wismar was objectively reasonable in handcuffing Wright while transporting him from Fox Park to the gas station for the show-up identification. The Fourth Amendment permits an officer to place a suspect in handcuffs in order to protect his own safety or preserve the status quo while performing a *Terry* stop. *U.S. v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006), *cert. denied*, 127 S.Ct. 1502 (2007). In *Martinez*, the Court held that it was reasonable for the police officers to handcuff the suspect while transporting him in the back of their patrol car for a show-up identification.[3] *Id.* at 908. The Court reasoned that exigent circumstances existed supporting the use of handcuffs because the officers could not confirm or "dispel their suspicions that had prompted the *Terry* stop until they transported Martinez back to the bank for the show-up identification." *Id.*

Wright's use of the holding in *El-Ghazzawy* is unavailing because there was no need to transport El-Ghazzawy anywhere in order to conduct a show-up identification. *See El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 455-58 (8th

---

[3] The Court further noted that show-up identifications are a permissible way for officers to obtain a pre-trial identification and "essential to free innocent suspects and to inform the police if further investigation is necessary." *Martinez*, 462 F.3d at 910.

Cir. 2011). Whereas here, Wright was stopped in a different location than where the petty larceny occurred. Doc. 115-24 at 7-8.

Similar to the officers in *Martinez*, Wismar could not confirm that he had the proper petty larceny suspect until he transported Wright to the gas station to be identified by the clerk that witnessed the theft. Doc. 115-24 at 8. This is an exigent circumstance, which justifies the handcuffing of Wright during the transport from Fox Park and the gas station. Accordingly, it was objectively reasonable to handcuff Wright while transporting him to the gas station for a show-up identification. *See Martinez*, 462 F.3d at 908.

### C. Any force used to effectuate the arrest was only *de minimis.*

Wright's excessive force claim fails because there is no genuine issue of fact as to whether Wismar reasonably used a small amount of force when effectuating the arrest. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Samuelson v. City of New Ulm,* 455 F.3d 871, 875 (8th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "Reasonable applications of

force may well cause pain or minor injuries with some frequency." *Id.* While a plaintiff's *de minimis* injury does not necessarily foreclose the possibility of a Fourth Amendment violation, it can be used to show only a corresponding *de minimis* use of force by the officer, which is insufficient to support a § 1983 claim. *Id.* at 906. Accordingly, the degree of injury is relevant insofar as it tends to show the amount and type of force used. *Id.*

Here, most importantly, Wright cannot identify Wismar as the officer that allegedly used excessive force during the arrest. Wright testified that four police officers showed up at Fox Park and placed him under arrest. Doc. 115-23 at 5. He does not know their names. Doc. 115-23 at 5. Wright testified that one of those officers slammed the car door on his right leg after Wright was thrown into the car; however, Wright could not identify the officer. Doc. 115-23 at 5-6.

Even if there was evidence that Wismar shut the car door, a reasonable jury could not conclude that anything more than *de minimis* force was used based upon Wright's own testimony that he did not feel any pain in his right leg at all on the day of the arrest, and felt throbbing in his right leg for about 10-15 minutes the next day, along with a "knot" on his shin. Doc. 98-4 at 19-21. Wright did not have any other complaints with regard to his right leg and was not injured anywhere else. Doc. 98-4 at 21. Wright's own testimony establishes that he suffered nothing more than a *de minimis* injury, which

could only have resulted from a *de minimis* use of force by a police officer. *See Chambers*, 641 F.3d at 906-07. Therefore, the Court should dismiss grant summary judgment in favor of Wismar on the excessive force claim.

## II. The Court should grant summary judgment in favor of the Board, Isom, Leyshock on the Fourth Amendment claims.

The Board[4] cannot be held municipally liable because Wright failed to prove that his Fourth Amendment rights were violated and Wright cannot prove causation between a municipal policy, custom, or lack of training or supervision and the alleged constitutional violation. With regard to failure to train and supervise claims, a municipality cannot be found liable unless the municipal employee or official committed a constitutional violation. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). Wright's argument that the Board's liability does not depend on Wismar's individual liability fails because there must be an underlying constitutional violation by municipal employees in order to precipitate municipal liability. *See Speer v. City of Wynne, Ark.*, 276 F.3d 980, 986 (8th Cir. 2000).

Wright's reliance on the Eighth Circuit's decision in *S.L.* is misplaced as the district court denied summary judgment to two of the defendants, who were not parties to the appeal, that were allegedly the officials that the Board

---

[4] The claims against Isom and Leyshock in their official capacities are essentially claims against the Board, so they will be referred to collectively as "the Board." *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

failed to supervise. *S.L. v. St. Louis Metropolitan Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 849-50 (8th Cir. 2013). In addition the Court's comment that granting qualified immunity to individual officers would not automatically determine whether the Board acted with deliberate indifference was in the context of its holding that the *Monell* claims against the Board were not inextricably intertwined with the qualified immunity analysis that was being considered on appeal. *Id.* at 854-55. As discussed in Section I, there was no violation of Wright's constitutional rights; therefore, the Board cannot be held municipally liable.[5]

   A.  **Wright's attempt to demonstrate a widespread pattern of unconstitutional acts is based upon inadmissible hearsay.**

However, even if there was some evidence that Wright's Fourth Amendment rights were violated, Wright must then establish that the Board had a policy or custom that caused the constitutional violation or that the municipality acted with deliberate indifference to the his constitutional rights by having inadequate training procedures or supervision in place. *See*

---

[5] Contrary to Wright's assertion in footnote 2 of his response, the Board's motion for summary judgment and supporting memorandum does address the Board's alleged liability for failure to train regarding use of force in Count III. *See* Doc. 98 at 16-21. As stated in the supporting memorandum, the Board had extensive policies in place that directed police officers how and when to use force. Doc. 98 at 18; Doc. 98-14; Doc. 98-15. In addition, the Board had appropriate training in place regarding use of force. Doc. 98 at 20-21.

*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 3788-92 (1989); *Bd. of the Co. Comm'rs v. Brown*, 520 U.S. 397, 404-07 (1997)).

In order to defeat summary judgment, the plaintiff must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles Co.*, 23 F.3d 1410, 1412 (8th Cir. 1994). Furthermore, "[o]nly evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment." *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Horton v. Hussmann Corp.*, No. 4:05CV65DDN, 2007 WL 2885166, at *1 (E.D. Mo. Sept. 27, 2007).

Wright has attempted to create issues of fact by filing 92 exhibits in support of his response in opposition under the guise that these exhibits constitute admissible evidence, the vast majority of which would be inadmissible at trial. More specifically, none of the documents contain business records affidavits, and very few of the exhibits have been authenticated through deposition testimony.

The most egregious exhibit is plaintiff's Exhibit 1 (Doc. 116-1 to Doc. 116-8), which is an 804-page compilation of hearsay documents, including printouts from Case.net, court orders, emails, and other unidentified documents, all of which are unaccompanied by business records affidavits or testimony from witness attesting to the authenticity of the documents. These random documents that are unaccompanied by business records affidavits are inadmissible hearsay and should not be considered as part of the summary judgment record. *See Horton*, 2007 WL 2885166, at *4 (documents that contain business records affidavits may be may be considered at the summary judgment stage).

In addition, Exhibit 1 also contains a 21-page document that appears to be typewritten summary of the contents contained within Exhibit 1. Doc. 116-1 at 1-21. This summary does not contain any information about who created the document or the basis of the author's knowledge. *See* Doc. 116-1 at 1-21. Accordingly, the Court should not consider the 21-page memorandum contained in Exhibit 1 in connection with summary judgment as it constitutes inadmissible hearsay evidence and has not been authenticated. *See Horton*, 2007 WL 2885166, at *2.

Similarly, Exhibit 2 appears to be a journal or log of criminal cases. Doc. 115-1. There is no business records affidavit to accompany this document, nor is there any deposition testimony or other sworn statements

that establish who created this document, when or why it was created, or the basis for the person's knowledge. Consequently, Exhibit 2 is inadmissible and should not be considered as part of the summary judgment record.

> **B.    There is no evidence that there is a widespread pattern of unconstitutional conduct by SLMPD employees.**

Even if Exhibits 1 and 2 constitute admissible evidence, Wright has failed to establish that there was a widespread pattern of unconstitutional misconduct by SLMPD employees because the conduct identified in Exhibits 1 and 2 does not amount to constitutional violations and it is too dissimilar from the Wismar's conduct to provide the Board with notice. In order to impose supervisory liability, the plaintiff must first establish that there was a "continuing, widespread, persistent pattern of <u>unconstitutional</u> misconduct by the governmental entity's employees." *Jane Doe A. v. Special Sch. Dist. of St. Louis Co.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Harris v. City of Pagedale*, 821 F.2d 499, 504-07 (8th Cir. 1987), cert. denied, 484 U.S. 986 (1987)) (emphasis added). A pattern of negligent misconduct or otherwise bad conduct (that manages to pass constitutional muster) is not sufficient to give rise to supervisory liability. *Id.* at 646. In addition to the requirement that the other conduct, which constitutes the widespread pattern, be unconstitutional, it must also be "very similar to the conduct giving rise to liability." *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012).

### 1. Widespread pattern

Wright argues that Exhibits 1 and 2 demonstrate that there have been at least 81 cases (and many more likely) where an individual was wrongly arrested by SLMPD based upon misidentification between 2007 and mid-2013. Doc. 117 at 6. While these exhibits may demonstrate that a criminal court ultimately determined that the arrested person was not the proper defendant, this in and of itself does not rise to the level of a constitutional violation. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested."). It is not enough to simply show that a mistaken identification occurred because a negligent mistake as to identity does not amount to a constitutional violation. *See Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000).

In any of these 81 cases, the suspect could have lied about his name or pedigree information at the time of the arrest, a civilian employee could have unintentionally transposed a letter or number when creating the arrest register during the booking process, the arresting officer could have reasonably but mistakenly believed that the suspect was the individual identified in a warrant, and so on. Because Exhibits 1 and 2 do not contain any information about the underlying arrests, they fail to show the similarity of conduct required under the law. *See Livers*, 700 F.3d at 356.

Wright also argues that there is "an egregious pattern" of SLMPD officers ignoring alias notification and correct LID emails and a pattern of deliberate indifference to these errors by watch commanders. Doc. 117 at 19-22. For this argument, Wright cites, for the most part, inadmissible evidence. Exhibits 1, 11, 12, 16, 18, and 32 constitute hearsay as they lack business records affidavits or other sworn testimony. *See* Docs. 116-1 to 116-8; 115-10; 116-9; 116-10; 116-11; 116-21. These exhibits should not be considered as part of the summary judgment record. *See Nooner*, 594 F.3d at 603.

Even if Exhibits 1, 11, 12, 16, 18, and 32 were admissible, along with the non-hearsay exhibits, none of them provide any evidence that an employee ignored an alias notification or correct LID email. Furthermore, Wright's assertions regarding a pattern of alias notifications being ignored is only relevant with regard to his allegation that employees were not following the internal policies that relate to alias notification and correct LID emails. This argument fails because a police department's internal policies do not create a constitutional right and a violation of an internal policy is not indicative of whether a government official violated the Constitution, especially where the plaintiff attempts to use the policies to demonstrate that the police officer did not follow policy during the incident in question. *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993); *Marti v. City of Maplewood, Mo.*, 57 F.3d 680 (8th Cir. 1995). Consequently, Wright has failed to offer any

evidence of a widespread pattern of unconstitutional conduct by SLMPD employees prior to his arrest in August 2011.

## 2. Similarity of conduct

With regard to the similarity of conduct, Wright argues that the *Kennell* case put the Board on notice thirteen years ago that there was a problem with officers ignoring LID numbers and that this problem caused constitutional violations for arrestees. Doc. 117 at 6-7. As discussed in section I(A), the *Kennell* case is distinguishable from this case because the defendant-officer received an internal notice from a fingerprint technician that the wrong person was in custody. *See Kennell*, 215 F.3d at 827. Here, there is no evidence that an alias notification or correct LID email was sent to Wismar (or any other SLMPD employee) indicating that was Wright's fingerprints did not match the LID on the warrants. Consequently, the Court's opinion in the *Kennell* case and past alleged problems associated with alias notification or correct LID emails being ignored or policy not being followed are so dissimilar from conduct alleged by Wright that they cannot constitute a widespread pattern.

With regard to Wright's arguments related to the Warrant/Fugitive Section, Wright relies on Exhibits 19, 26, and 55 to support his contention that there were "problems" within that section. *See* Doc. 117 at 16-17 (citing Docs. 116-12; 116-16; 116-41). Exhibits 19, 26, and 55 are emails that

constitute inadmissible hearsay and should not be considered. *See Nooner*, 594 F.3d at 603. Despite the inadmissibility of some of the exhibits relied upon by Wright, there is no evidence in the record that the "problems" identified by Sergeant Crews with regard to warrant packing were caused by SLMPD employees.[6] There is no evidence in the record that indicates that Sergeant Crews is a final policymaker for SLMPD, nor that he ever attempted to make the Board aware of his concerns.

With regard to the arguments related to the Prisoner Processing Division, Wright relies on Exhibits 41 and 45 to support his contention that there were "problems" within this division. *See* Doc. 117 at 16-17 (citing Docs. 116-29; 116-33). Exhibits 41 and 45 are emails that constitute inadmissible hearsay and should not be considered. *See Nooner*, 594 F.3d at 603. Furthermore, these alleged mistakes by employees and concerns by supervisors are immaterial to summary judgment because they occurred after Wright had been processed at the City Justice Center and there is no evidence that an error was made while Wright was being processed.

Again, Wright relies on inadmissible evidence by way of Exhibit 46 in an attempt to establish misconduct within the Identification Section. *See* Doc. 117 at 18 (citing Doc. 116-46). Exhibit 46 is inadmissible hearsay and

---

[6] Instead, Crews testified that the information used to pack warrants is not provided by arresting officers, it comes from criminal databases, such as MULES and NCIC. Doc. 115-18 at 10.

should not be considered. *See Nooner*, 594 F.3d at 603. In addition, Judge Garvey's testimony about the delay in fingerprint comparison responses is immaterial because it does not suggest any employee misconduct nor is there any evidence that he voiced these concerns to the Board. *See* Doc. 115-17. Nonetheless, the alleged staffing problems that Wright has identified do not come close to constituting misconduct and did not occur until after Wright's arrest. Furthermore, there is no evidence that there was a delay in comparing Wright's fingerprints while he was in police custody, nor is there any evidence that Wright's misidentification were caused in any way by the Identification section. Consequently, Wright has failed to offer evidence that there was a widespread pattern of similar unconstitutional conduct by SLMPD employees prior to Wright's arrest.

### C. Wright's failure to supervise claim fails because there is no evidence that the Board had notice of unconstitutional conduct or intentionally insulated itself.

With regard to Wright's failure to supervise claim, there is no evidence that the Board was deliberately indifferent to or tacitly authorized the misidentification of arrestees by police officers. A failure to supervise claim is "governed by the deliberate indifference standard" and requires a showing that the employer "demonstrated deliberated indifference or tacit authorization" of the unconstitutional acts. *Liebe v. Norton*, 157 F.3d 574,

579 (1998). Wright does not dispute the Board's assertion that it did not receive notice of any unconstitutional conduct by its employees. Instead, Wright argues that the Board "actively avoids keeping informed about identification issues." Doc. 117 at 7. This contention fails because Wright has not offered evidence from which an inference can be drawn to support this conclusory statement. Wright attempts to support this contention with Exhibit 87, which is an email between counsel for the parties.[7] Doc. 115-39. This document contains inadmissible hearsay and should not be considered as part of the summary judgment record. *See Nooner*, 594 F.3d at 603. It is unreasonable to draw any inference from this exhibit that relates to the Board's actions or knowledge. In addition, although undersigned counsel had good reason[8] to only produce Board President Colonel Richard Gray for a deposition in connection with this lawsuit, that decision is completely immaterial to summary judgment.

While Colonel Gray did testify that he did not become aware of the allegation that there were problems with misidentifying arrestees until after

---

[7] Wright's counsel could have filed a motion to compel the depositions of the other Board members after receiving this email; however, they did not. As a result, this issue was never brought before the Court. It is improper for Wright to attempt to bring this matter before the Court nearly two months after discovery closed.

[8] Undersigned counsel noted that the individual Board members cannot act unilaterally as the Board only operates and makes decisions as a whole. Therefore, the President could testify on behalf of the Board as a whole. Doc. 115-39.

this lawsuit was filed in 2012 and that he has never seen any statistics regarding the frequency of misidentifications or claims of misidentification, Doc. 115-31 at 5, Wright has not offered any evidence that this information exists from which the Board could insulate itself prior to Wright's arrest in August 2011.

The Internal Affairs Division did not receive any citizen complaints or internal complaints in the five years preceding 2011 regarding the failure, or alleged failure, of SLMPD officers to properly identify individuals in their custody. Doc. 98-8. Therefore, it is unreasonable to infer "insulation" by the Board from Colonel Gray's testimony that he has never been provided with any documents from SLMPD reflecting the number of claims of misidentification because there is no evidence that SLMPD had received any claims of misidentification prior to August 2011.

Similarly, it is unreasonable to infer "insulation" by the Board from Colonel Gray's testimony that he has never been provided with any statistics that demonstrate the frequency of misidentification of suspects because there is no evidence that SLMPD had statistics regarding misidentifications. It's simply not possible for the Board to insulate itself from information that doesn't exist. Consequently, Wright has not offered any evidence from which an inference can be drawn that the Board insulates itself and Wright's failure to supervise claim fails. *See Liebe*, 157 F.3d at 579.

**D.     There is no evidence that the Board had notice of inadequate training on how to arrest and detain individuals.**

There is no evidence that the Board had actual or constructive notice of, and therefore was deliberately indifferent to, a need for more or different training of police officers on how to arrest and detain individuals.  A police department can only be held liable for inadequate training of its police officers if those failures amount to "deliberate indifference to the rights of persons with whom the police come into contact."  *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (*citing City of Canton*, 489 U.S. at 388)).

As discussed above in subsection B, Wright has not offered any evidence of a widespread pattern of similar constitutional violations by police officers that misidentified arrestees.  Furthermore, SLMPD's training for police officers related to arresting and booking suspects was appropriate.  *See* Doc. 98 at 20-21.  In addition, whether or not training for civilian employees that work in the Prisoner Processing Division related to proper identification techniques is immaterial to summary judgment as Wright himself alleges that it is not the division's function to identify the wanted person on each charge.  Doc. 117 at 23.

Further, Wright's arguments that there was inadequate training on how to handle a situation where an arrestee claims to be misidentified is immaterial to summary judgment because Wright never claimed to be

misidentified while in the custody of SLMPD.  *See* Doc. 115-23 at 6.  Instead, Wright testified that he only told the arresting officers while in the back of the patrol car that he was Cedric Wright, not Corey Leonard.  Doc. 115-23 at 6.

### III.  The Court should dismiss Wright's state law claim against Wismar.

For the reasons discussed in defendants' memorandum in support of summary judgment, this Court should decline to exercise supplemental jurisdiction over Wright's supplemental state law claim against Wismar for false arrest and false imprisonment.  *See* Doc. 98 at 22-23.  However, should the Court decide to exercise supplemental jurisdiction over Wright's state law claim, this claim fails on the merits as Wright cannot prove the necessary elements of false arrest and false imprisonment because the undisputed facts demonstrate that Wismar had probable cause to arrest Wright for petty larceny.

A plaintiff may only prevail on a false arrest or false imprisonment claim by demonstrating that the arresting officer did not have probable cause to make the arrest.[9]  *Taylor v. Isom*, No. 4:11CV1351CAS, 2013 WL 1867106, at *8 (E.D. Mo. May 2, 2013).  As discussed in Section II, Wismar had

---

[9] Wright's allegations in paragraph 132 of the Complaint related to his booking and events that occurred after the arrest are not actionable under a false arrest claim.  *See Taylor*, 2013 WL 1867106, at *8.

probable cause to arrest Wright for petty larceny. *See* Doc. 98-3 at 35-37. Regardless of whether or not Wright was booked on the outstanding warrants, Wismar testified that Wright would have been booked on the petty larceny charge and transported to the City Justice Center as it is Wismar's general practice to book arrestees for non-traffic related city ordinance violations. Doc. 98-3 at 20-22. Once a suspect is in police custody and been placed under arrest, he cannot be rearrested. *Garionis v. Newton*, 827 F.2d 306, 310 (8th Cir. 1987). Consequently, Wismar's arrest of Wright was justified. *See Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984).

Furthermore, Wismar is protected by official immunity and the public duty doctrine. Wright does not dispute that Wismar's decision to stop and arrest Wright was a discretionary act, nor does he dispute that Wismar did not owe an individual duty to Wright. Doc. 117 at 35. Rather, he argues that these doctrines are precluded because Wismar acted in bad faith. Doc. 117 at 35.

Contrary to Wright's assertion, there is no evidence that Wismar acted in bad faith when he arrested Wright. Wismar testified that he would not have booked Wright on the felony warrants without "trying to make sure to the best of [his] ability that it was him or wasn't him." Doc. 98-3 at 57.

There is no evidence in the record that Wismar knew Wright's LID number[10] at the time of the arrest; nor is there any evidence that Wismar purposefully served the wrong warrants on Wright.  At most, Wismar made a mistake, or acted negligently, in deciding to book Wright on the outstanding warrants, which does not amount to a constitutional violation.  *See Young*, 249 F.3d at 734.  Consequently, Wismar is entitled to summary judgment on Count IV.

## IV.  Conclusion

Defendants Slay, Irwin, Battle-Turner, Gray, Isom, Leyshock, and Wismar's motion for summary judgment should therefore be granted.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

/s/ *Karin A. Schute*
Karin A. Schute, #62019MO
Chris R. Hoell, #54011MO
Assistant Attorneys General
Missouri Attorney General's Office
P.O. Box 861
St. Louis, Missouri  63188
Phone:  (314) 340-7861
Fax:  (314) 340-7029
*Attorneys for Defendants Slay,*
*Irwin, Battle-Turner, Gray, Isom,*
*Leyshock, and Wismar*

---

[10] Wismar testified that he has never used an LID number to identify a person.  Doc. 115-24 at 6.

# CERTIFICATE OF SERVICE

I certify that on this 18 day of November, 2013, I electronically filed the foregoing with the clerk of this Court by using the CM/ECF system, to be served by operation of the Court's electronic filing system, to the following:

Mr. James O. Hacking, III
Ms. Jennifer Shoulberg
Hacking Law Practice, LLC
34 N. Gore, Suite 101
St. Louis, Missouri 63119
*Attorneys for Plaintiff*

Mr. Daniel J. Emerson
City Counselor's Office
Room 314, City Hall
St. Louis, MO 63103
*Attorney for Defendants St. Louis City Sheriff's Department, Sheriff Murphy, St. Louis City Division of Corrections, and Bryson*

/s/ *Karin A. Schute*
Assistant Attorney General